**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MAX BAZERMAN, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMERICAN AIRLINES, INC., a Delaware Corporation,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>**Breach of Contract** |

## CLASS ACTION COMPLAINT

Plaintiff Max Bazerman, on behalf of himself and all other persons similarly situated, by and through his counsel, hereby complains and alleges as follows:

## I.    INTRODUCTION

1.    This case is about American Airlines, Inc.'s ("AA") systematic failure to honor the contracts it enters into with its passengers. AA's passenger contracts include promises that specified passengers are permitted to check a first, second, and/or third bag for no additional charge. These passengers include "elite" members of certain frequent flyer programs and those who purchase certain types of tickets, such as business class or first class. AA contracts also routinely promise certain other passengers that they are permitted to check their first bag for no additional charge. Yet, AA systematically required these passengers to pay to check bags that AA had promised to transport at no additional charge, and thus breached its contract with affected passengers.

1

2.      AA drafted each contract that it enters into with each of its passengers.  The contracts include AA's promises to provide air travel for a price, and to provide other benefits, such as transporting a certain number of the passenger's checked bags for no additional charge. However, AA failed to honor its checked bag promises in the standardized software system that AA uses to determine whether passengers must pay for checked bags when they check in at the airport.  Because this standardized software, AA's Passenger Service System ("PSS"), required passengers to pay for checked bags that AA promised it would transport for no additional charge, AA systematically breached its contracts with passengers.

3.      AA is among the largest US-based airlines in terms of passengers transported.[1]  In 2016, AA transported the second greatest number of passengers of any US-based airline, with approximately 144 million passengers carried.[2]  AA's closest two competitors, Delta Airlines and Southwest Airlines, transported, respectively, approximately 143 million passengers and 151 million passengers in 2016.  At the same time, AA far outpaced the competition in terms of revenue collected from checked bag fees.[3]  In 2016, AA collected approximately $1.117 billion in revenue from checked bag fees, which was over 28% higher than the airline with the second highest revenue from checked bag fees.[4]  One way AA increases the revenue it receives from checked bag fees is to systematically charge checked bag fees to certain passengers in breach of its passenger contracts.

---

[1] "2016 Traffic Data for U.S. Airlines and Foreign Airlines U.S. Flights," Bureau of Transportation Statistics, Department of Transportation, available at: https://www.rita.dot.gov/bts/press_releases/bts017_17 (last visited on July 2, 2017).
[2] *Id.*
[3] "Baggage Fees by Airline 2016," Bureau of Transportation Statistics, Department of Transportation, https://www.rita.dot.gov/bts/sites/rita.dot.gov.bts/files/subject_areas/airline_information/baggage _fees/html/2016.html (last visited on July 2, 2017).
[4] *Id.*

672961.37

4.      On or around December 12, 2016, Plaintiff Bazerman purchased tickets online from AA for himself and a companion to travel on a domestic flight.  When Mr. Bazerman purchased these tickets, Mr. Bazerman and AA entered into a contract which included AA's promises that Mr. Bazerman and his traveling companion, ticketed in the same record, could each check their first and second bags for no additional charge.  However, when Mr. Bazerman and his companion arrived at the airport on March 4, 2017 with two bags to check, AA required Mr. Bazerman to pay to check both of the bags.  Mr. Bazerman paid the fee.

5.      Plaintiff Bazerman brings this class action complaint on behalf of himself and all others similarly situated, to enforce the terms in AA's contracts promising passengers checked bags for no additional charge.

## II.      PARTIES

6.      Plaintiff Max Bazerman is a U.S. citizen residing in Massachusetts.  When Mr. Bazerman purchased the tickets on December 12, 2016, he did so from his computer at his office in Boston, Massachusetts.

7.      Defendant American Airlines, Inc. is one of the world's largest airlines, providing air travel to passengers and their luggage both domestically and internationally.  AA is incorporated in Delaware, headquartered in Texas, and does business in all fifty states, including Massachusetts.[5]

## III.      VENUE AND JURISDICTION

8.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) because the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of a state different from AA.

---

[5] *See* http://aa.fltmaps.com/en (AA's flight map, which shows destinations in all 50 states) (last visited on July 2, 2017).

9.      This Court has personal jurisdiction over AA because AA does continuous business in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff is a resident of this District, Plaintiff purchased his AA ticket in this District, and AA does business in this District.

## IV.      FACTUAL ALLEGATIONS

11.     AA entered into air travel contracts with categories of passengers, whereby AA committed to transport a certain number of checked bags for those passengers at no additional charge.  But AA systematically breached those contracts by nevertheless requiring those passengers to pay AA to check such bags.

12.     AA enters into a contract with each of its passengers when a passenger purchases a ticket for travel on AA ("Contract").  In particular, when a passenger purchases a ticket for an AA flight, AA promises the passenger that AA will provide flights as well as other benefits.  AA's promises are included in the following parts of the Contract, which all become part of the Contract at the time the passenger purchases a ticket for travel on AA.  First, each Contract includes the ticket, which contains terms such as the specific flight or flights, at a specific date and time, and for a specific class of service.  Second, each Contract includes AA's standard terms and conditions, described further in the following paragraph.  Third, terms containing AA promises are also added at the time the ticket is purchased when a passenger makes a purchase on AA's website (AA.COM).  These terms are promises that AA makes to passengers at the point of purchase ("Point of Purchase Terms"), which are typically summarized and memorialized in an AA.COM screen entitled "Your Trip Summary."  Like the other terms listed above, the Point of Purchase Terms form part of the Contract when the passenger purchases a ticket online for travel on AA.

4

13.     AA has two standard terms and conditions, one of which is incorporated into each Contract.  If a passenger purchases a ticket entirely for travel between points in the United States (which includes the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico; collectively, "Domestic Flights"), the applicable standard terms and conditions are the Conditions of Carriage ("Domestic Terms").  If the passenger purchases a flight that is at least partially international, the standard terms and conditions are the "International General Rules" ("International Terms" or "IGR").

14.     AA's standard terms and conditions state that the Contract includes the ticket and AA's standard terms and conditions.  The Domestic Terms state, "Your ticket and the following Conditions of Carriage constitute the contract between you, the passenger, and American Airlines, Inc."  The International Terms likewise state, under the "AARULE 0005" heading, that it applies to all international travel and that the ticket includes terms that are part of the Contract.  For example, the International Terms define "Passenger Ticket" as "those portions of the ticket issued by the carrier that provide for the carriage of the passenger."  In addition, the International Terms define "Baggage Check" as the "portion[] of the ticket which provide[s] for the carriage of the passenger's checked baggage," and "Flight Coupon" is defined as the "portion of the passenger ticket that indicates particular places between which the coupon is good for carriage."

15.     At all airports, AA uses computers, including check-in kiosks for passengers and computer terminals for agents, to check passenger bags.  On information and belief, these computers all run, connect to, and/or are controlled by AA's PSS.  The PSS determines whether and what amount passengers have to pay to check bags for AA flights.  According to AA, it

operates on a "Single Passenger Service System."[6]  On information and belief, AA's PSS is a standardized system that runs consistently throughout AA's operation.

16.     AA's records memorialize AA's promises to passengers, including the number of free bags it promised to each passenger, which passengers paid checked baggage fees, and in what amounts.  For example, Mr. Bazerman received a computer-generated receipt from AA's computer system that states the amount Mr. Bazerman paid for each checked bag.  AA's electronic records show when a passenger holds a frequent flier "elite" status that qualifies the passenger for free checked bag benefits, as set forth in paragraphs 25-29 and 31-33, below.

A.     **All Contracts promise certain passengers that AA will transport a certain number of checked bags for no additional charge.**

17.     The Contract promises specified passengers that AA will transport a certain number of checked bags for no additional charge.  These promises are included in the Domestic Terms, the International Terms, the ticket, and the Point of Purchase terms.

18.     For example, Plaintiff Max Bazerman and AA entered into the Contract on December 12, 2016, when Mr. Bazerman used AA.COM to purchase one-way travel for himself and his wife to travel in coach from Phoenix to Boston.

19.     In the Contract, AA repeatedly promised Mr. Bazerman that AA would transport his first and second checked bags for no extra charge.  Specifically, the e-ticket confirmation email (memorializing the ticket purchase, as described further in paragraph 45) which AA sent to Mr. Bazerman expressly stated that Mr. Bazerman and his companion would each incur a fee of "USD0.00" for their respective first checked bags.

---

[6] *See* History of American Airlines, available at: https://www.aa.com/i18n/customer-service/about-us/history-of-american-airlines.jsp (last visited on July 2, 2017).

20.     Additionally, both at the time of booking and at the time of travel, Mr. Bazerman had "Platinum" frequent flyer status with AA.  The Domestic Terms promise Platinum members that AA will transport their first and second checked bags for no additional charge.  The Domestic Terms also promise Platinum members that these checked benefits extend to companion passengers travelling on the same reservation.  On information and belief, AA.COM presented substantially the same information to Mr. Bazerman before he purchased the ticket.

21.     Mr. Bazerman also had oneworld Sapphire status because, both at the time of booking and at the time of travel, Mr. Bazerman held British Airways "Silver" status, which qualifies him for oneworld Sapphire status.  Matching the promises AA makes as to members with Platinum status, the Domestic Terms promise oneworld Sapphire members that AA will transport their first and second checked bags for no additional charge.  On information and belief, AA.COM also presented substantially the same information to Mr. Bazerman before he purchased the ticket.  As with Mr. Bazerman's Platinum status, AA knew that Mr. Bazerman had oneworld Sapphire status.  Mr. Bazerman specifically demonstrated his qualification for oneworld Sapphire status to AA both by telephone and again in person when he checked in at the airport in Phoenix.

22.     These marketing labels, Platinum and oneworld Sapphire, and others listed herein, refer to passengers who have achieved, and who are listed in AA's records as having achieved, the corresponding "elite" levels in the frequent flyer programs that AA and its partners operate.

**1.      All AA Contracts for domestic travel include terms promising certain passengers that AA will transport a certain number of checked bags for no additional charge.**

23.     The current version of AA's Domestic Terms is available online at https://www.aa.com/i18n/customer-service/support/conditions-of-carriage.jsp.  On information

672961.37

and belief, the current version of the Domestic Terms has been in effect since March 29, 2016.

24.     The Domestic Terms has a section titled, "Checked baggage," where AA provides a link to, and thereby incorporates, the Checked Bag Policy into the Domestic Terms.  The current Checked Baggage Policy is available online at https://www.aa.com/i18n/travel-info/baggage/checked-baggage-policy.jsp.  On information and belief, the current version of the Checked Baggage Policy has been in effect since March 29, 2016.

25.     In the Checked Bag Policy's section titled, "What will it cost?," AA lists promises to transport a certain number of checked bags for certain passengers for no additional charge.

26.     This list includes AA's promise that a first checked bag will be transported for no additional charge for AAdvantage Gold members, oneworld Ruby members, and Alaska Airlines MVP members.

27.     The same list includes AA's promise that a first and second checked bag will be transported for no additional charge for AAdvantage Platinum and Platinum Pro members, oneworld Sapphire members, Alaska Airlines MVP Gold members, and passengers confirmed in business class.

28.     Also included in the Checked Bag Policy's list is AA's promise that a first, second, and third checked bag will be transported for no additional charge for AAdvantage Executive Platinum members, oneworld Emerald members, and Alaska Airlines MVP Gold 75K members.

29.     In the Domestic Terms, AA also promises that when an AAdvantage Gold, Platinum, Platinum Pro, or Executive Platinum member travels, the checked bag benefits extend to other passengers traveling on the same reservation.

672961.37

2.     **All AA Contracts for international travel include terms promising certain passengers that AA will transport a certain number of checked bags for no additional charge.**

30.     The current version of AA's International Terms is available online at https://www.aa.com/i18n/Tariffs/AA1.html.  On information and belief, this version of the International Terms has been in effect since approximately September 6, 2016, and the previous version of the International Terms was in effect from approximately March 29, 2016 through approximately September 5, 2016.

31.     Like the Domestic Terms, the current International Terms include a list of AA promises to specified passengers regarding checked bag fees (subsection AA Rule 0116(E), entitled "Checked Baggage").

32.     This list includes AA's promise that a first and second checked bag may be transported for no additional charge for AAdvantage Platinum Pro and Platinum members, oneworld Sapphire members, Alaska Airlines MVP Gold members, passengers in the same reservation as AAdvantage Platinum and oneworld Sapphire members, and passengers traveling on first and business class award tickets (including upgrades confirmed prior to check-in).

33.     This list also includes AA's promises that a first, second, and third checked bag may be transported for no additional charge for AAdvantage Executive Platinum members, oneworld Emerald members, Alaska Airlines MVP Gold 75K members, and passengers in the same reservation as an AAdvantage Executive Platinum member or oneworld Emerald members.

34.     For those passengers flying during the time period when AA's previous IGR was in effect, AA promised additional baggage benefits in certain circumstances.  This version of the IGR, which was in effect from on or before March 29, 2016 through at least September 5, 2016, promised that passengers travelling on transatlantic and transpacific flights in business class

could check three bags for no additional charge, not just the two bags specified in the current IGR.

      **3.**      **AA's promises in the Point of Purchase Terms are part of the Contract between AA and those passengers who purchase tickets from AA.COM.**

35.      AA makes additional bag check promises at the Point of Purchase to passengers buying tickets on AA.COM.  When a passenger purchases a ticket on AA.COM, the passenger first chooses destination, dates, and class of service.  After the passenger makes these choices and before the passenger pays, AA displays a "Your Trip Summary" screen where it promises the passenger that it will provide the specific flights as well as certain benefits, including the number of bags the passenger can check without additional charge, if the passenger pays AA the listed fare.

36.      During the periods listed in subsequent paragraphs, the AA Your Trip Summary screen promised passengers who purchased domestic first class tickets, domestic business class tickets, and international business class tickets that AA would transport their first, second, and third checked bag for no additional charge.  These promises at the Point of Purchase became part of the Contract when the passenger performed by paying the listed fare.

37.      For example, below is a screenshot from the class period showing promises that AA made at the Point of Purchase to passengers purchasing domestic first class tickets.



38.     For tickets purchased from AA.COM from March 29, 2016 through at least December 1, 2016, the AA.COM Your Trip Summary screen promised that all domestic first class tickets included "Up to 3 checked bags" at no additional charge.  The screenshot above (captured on October 16, 2016) demonstrates that promise.

39.     For tickets purchased from AA.COM from March 29, 2016 through at least May 23, 2016, the AA.COM Your Trip Summary screen promised that all domestic business class tickets included "Up to 3 checked bags" at no additional charge.  For example, below is a screenshot from May 2016 showing promises that AA made at the point of purchase to passengers purchasing domestic business class tickets.



40.     On information and belief, during a portion of 2016, the AA.COM Your Trip Summary screen promised that all international business class tickets included "Up to 3 checked bags" at no additional charge.

41.     AA repeated its promise of three checked bags at no additional charge when encouraging passengers to purchase a higher class of service, such as business class or first class rather than coach.  It systematically made this promise when using a device known as an "upsell screen," in which a passenger must accept or decline an offer to upgrade service before completing the transaction.  In particular, AA displayed an upsell screen on AA.COM from March 29, 2016 through at least December 1, 2016, stating that it would accept "Up to 3 checked bags" from the passenger at no additional charge if the passenger paid extra to upgrade to the higher class of service.  For example, below is a screenshot from November 2016 showing promises that AA made at the Point of Purchase to induce passengers to purchase domestic first class tickets.



42.    If the passenger clicked on AA's upsell display, AA then repeated this same promise on its Your Trip Summary screen displayed at the Point of Purchase.

43.    Likewise, AA systematically repeated baggage promises in an upsell screen when passengers checked in on AA.COM ("Check-in Upsell Page").  In the check-in upsell, AA offered passengers a higher class of service, such as first class or business class, if they paid an additional fee.  For check-ins occurring on AA.COM from March 29, 2016 through at least December 21, 2016, the AA.COM Check-in Upsell Page indicated that if the passenger paid an additional fee for a first class ticket, the passenger would receive specific benefits including "Up to 3 checked bags" at no additional charge.  On information and belief, a similar Check-in Upsell Page made similar "upsell" promises to domestic business class and international business class passengers.

**4.    All AA tickets include terms promising how many checked bags AA will transport for no additional charge.**

44.    As set forth in paragraphs 12 to 14 above, the terms in a passenger's ticket are part of the passenger's Contract with AA.

45.     When a passenger buys an electronic ticket ("e-ticket") from AA, AA does not provide the passenger with a paper ticket.  Nor does AA provide the passenger with the actual e-ticket, which is a record in an AA computer server.  Instead, AA sends the passenger an e-ticket confirmation email, which reports key terms of the e-ticket.  AA's e-ticket confirmation emails specify the checked bag charges associated with the passenger's itinerary and ticket.  On information and belief, the e-ticket confirmation email's promises regarding checked bag charges match the terms of the actual e-ticket.

46.     AA sends e-ticket confirmation emails that systematically promise certain passengers that they may check their first bag for no additional charge.  For example, Mr. Bazerman's e-ticket confirmation email, which has the same format and types of information as the other e-ticket confirmation emails AA sends to passengers, stated:

> Baggage charges for your itinerary will be governed by American Airlines BAG ALLOWANCE - PHXBOS-No free checked bags/ American Airlines 1STCHECKED BAG FEE-PHXBOS-USD0.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM 2NDCHECKED BAG FEE-PHXBOS-USD35.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY

47.     The e-ticket confirmation email's checked bag terms specify which airline's bag allowance rules apply.  Since Mr. Bazerman was travelling solely on AA-operated flights, his e-ticket confirmation email stated that his flight is "governed by American Airlines BAG ALLOWANCE."  In contrast, a passenger who purchases a ticket from AA for flights all operated and marketed by one of AA's partner airlines, for example Japan Airlines, will receive an e-ticket confirmation email stating "Baggage charges for your itinerary will be governed by Japan Airlines BAG ALLOWANCE."

48.     When AA's Bag Allowance rules apply, these terms reflect AA's promises to the passenger regarding checked bag fees.  For example, Mr. Bazerman's e-ticket confirmation email states, "American Airlines 1STCHECKED BAG FEE-PHXBOS-USD0.00/."  This means that Mr. Bazerman, like all other passengers who received this promise from AA, was entitled to check his first bag for no additional charge.

49.     This promise and the statement preceding it, "PHXBOS-No free checked bags/," do not contradict each other because the plain language of the Contract demonstrates that the Contract intends to promise the passenger a first checked bag for no additional charge.  The promise that the "1ST CHECKED BAG FEE" is "USD0.00" is more specific than "No free checked bags."  In addition, if the statement "No free checked bags," means that a passenger cannot check any bags for no additional charge regardless of other statements in the Contract, then the promise that the first checked bag fee is "USD0.00" has no meaning.  Rather, the statement "No free checked bags" merely refers to AA's general policy that a passenger does not get to check bags for no additional charge unless there is a promise of checked bags for no additional fee elsewhere in the Contract.  The Contract confirms this reading because the e-ticket confirmation email also states, "ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY."  ("Additional Allowances Sentence").  The Additional Allowances Sentence applies both to the e-ticket confirmation email as well as the remainder of the Contract because the ticket is part of the whole contract, which includes the ticket as well as the standard terms and any point of purchase promises.

50.     Alternatively, to the extent that the "No free checked bags" clause might be taken to conflict with the promised price of "USD0.00" for the first checked bag, passengers are still promised a first checked bag for no additional charge because AA drafted all Contracts and all

15

terms in the Contracts regarding checked bag fees.  Any ambiguity in, or contradiction within, the Contract must therefore be construed in favor of the passenger.

51.     AA systematically promises certain passengers that they may check a first bag for "USD0.00."  AA makes that promise to passengers to whom AA does not elsewhere promise to transport a first checked bag for no additional charge under the Domestic Terms, International Terms, or any applicable Point of Purchase promise.  Indeed, AA made this promise to numerous other AA passengers, who reported publicly, such as on Twitter and online discussion forums including flyertalk.com, that they received e-ticket confirmation emails that promised a first checked bag without charge.  In each case, these passengers reported an e-ticket confirmation email that specified that a first bag could be checked at a fee of "USD0.00"—although these passengers booked coach tickets, did not have elite status, and were not otherwise entitled to check bags without charge under other parts of the Contract, such as AA's Checked Baggage Policy.

**B.      AA systematically breached the Contract because it required certain passengers to pay to check certain bags.**

52.     AA breached its baggage fee obligations in the contract in the same way for all affected passengers.  At the time when specified passengers purchased a ticket, AA formed a Contract with each such passenger that included a promise that AA would check the passenger's first, second, and/or third bag at no additional charge.  But when these passengers attempted to check their first, second, and/or third bag, AA systematically required such passengers to pay to check such bags.

672961.37

    **1.**       **AA breached the Contract terms contained in the ticket promising passengers that they could check certain bags for no additional fee.**

53.      Even when tickets specifically provide that a first bag may be checked at no additional charge, AA systematically required passengers to pay to check their first bag.

54.      For example, Mr. Bazerman received an e-ticket confirmation e-mail from AA that stated "1STCHECKED BAG FEE-PHXBOS-USD0.00."  Yet, when Mr. Bazerman and his wife sought to check their bags after arriving at the airport, AA required Mr. Bazerman to pay $25 to check his first bag and $25 to check his wife's first bag.

55.      AA systematically included its promise to check a first bag for no additional charge in the e-ticket confirmation emails of passengers flying in coach who were not otherwise entitled to check a bag, at no additional charge, under other provisions of the Contract.  At the same time, AA systematically required passengers, such as Mr. Bazerman, to pay to check their first bag.

56.      Like Mr. Bazerman, an AA passenger reported, on Twitter, having received an AA e-ticket confirmation email for her travel on an AA domestic flight in or around March 2017 that promised that she could check her first bag for no additional charge.  Nonetheless, the passenger reported that AA required her to pay $25 when she checked the bag.

57.      In other examples, the following AA passengers on domestic flights reported, on Twitter, being charged to check their first bag despite receiving an e-ticket confirmation email from AA promising each of them that AA would transport their first checked bag for no additional charge on their domestic flight: an AA passenger flying on or around May 3, 2017; an AA passenger flying on or around April 28, 2017; and an AA passenger flying on or around December 2016.

2. **AA breached the Contract's terms promising passengers who are elite frequent flyer members that they could check certain bags for no additional fee.**

58.     As described above, AA promised Executive Platinum members, Platinum members, and partner elite members that they could check their first, second, and/or third bag for no additional charge.

59.     Contrary to its uniform promise to all members of such elite frequent flyer programs, AA required Executive Platinum, Platinum, and members of partner elite frequent flyer programs to pay AA for their first, second, and/or third checked bag.

60.     For example, in the Domestic Terms, AA promised Mr. Bazerman that he could check his first and second bags for no additional charge because Mr. Bazerman had, both at the time of booking and at the time of travel, "Platinum" frequent flyer status and oneworld Sapphire frequent flyer status.  Yet, at the airport, AA required Mr. Bazerman to pay to check his first bag and to pay to check a first bag for his wife, whose travel was booked on Mr. Bazerman's reservation.

61.     Many other passengers reported, on Twitter and other public discussion forums such as flyertalk.com, that AA required them to pay for checked bags that AA promised to transport for no additional charge because they qualified for a particular frequent flyer status.  For example, a passenger and oneworld Emerald member reported, on Twitter, as having flown on an AA domestic flight in or around January 2017.  Although AA's Domestic Terms promised oneworld Emerald passengers that they could check their first, second, and third bags for no additional charge, AA required this passenger to pay AA to check his first and second checked bags.

62.     A passenger and Executive Platinum member stated, on flyertalk.com, that he was required to pay to check his third bag on at least four occasions in or around September and October 2016 despite AA's promise in the Domestic Terms that Executive Platinum members could check their first, second, and third bags for no additional charge.

63.     Beginning on March 29, 2016, numerous other Executive Platinum members reported, on Twitter and flyertalk.com, that when they sought to check their bags, AA required them to pay to check their third bag.

**3.      AA breached the Contract's terms promising passengers who travelled on business and first class tickets that they could check certain bags for no additional fee.**

64.     As described above, AA's Contracts with business and first class passengers promised that they could transport up to three bags at no additional charge.  Yet AA systematically breached its promises to these passengers.  AA passengers have reported, on Twitter and flyertalk.com, that AA required them to pay for checked bags that AA promised in the Contract to transport for no fee.

65.     For example, a passenger purchased a first class ticket on AA's website for travel in January 2017.  AA's Your Trip Summary screen promised her that she could check her first, second, and third bags for no additional charge if she paid AA the stated fare.  Nonetheless, AA required her to pay to check her third bag.

66.     Similarly, another passenger stated that he purchased a ticket on AA's website for a first-class seat on a domestic flight in or around November 2016.  AA's Your Trip Summary screen promised him that he could check his first, second, and third bags for no additional charge.  Nonetheless, AA required him to pay to check his third bag.

19

672961.37

67.     Another passenger reported having purchased a ticket on AA's website for travel in July 2016 and choosing a first class ticket based on AA's Point of Purchase promise that she could receive "Up to 3 checked bags" if she bought that ticket.  Upon checking in, she was not able to check a third bag for no additional charge because AA refused to accept her third checked bag unless she paid an additional $200.

68.     Another passenger stated that although he upgraded to first class for a portion of his journey on AA, in or around May 2016, he was required to pay to check his second bag despite AA's promises that first class passengers receive their first and second bag for no additional charge.

69.     Many passengers complained directly to AA, including publicly via Twitter. Affected passengers widely reported surprise at being charged for their third checked bag, particularly when they were told prominently at the Point of Purchase that three bags could be checked for no additional charge.  For example, one passenger complained on Twitter: AA "says I get three bags with 1st class upgrade … But I was charged $150. Shame on you!"  Another passenger explained on Twitter: "When I purchased my ticket, the box I clicked stated I was allowed 3 free bags."  Multiple passengers posted screenshots or photographs showing the promises that AA made in the Point of Purchase Terms that AA offered on AA.COM to allow business and first class passengers to check up to three bags for no additional charge.

70.     In addition to the Point of Purchase Terms, other terms in the Contract made promises to passengers who purchased transatlantic and transpacific business class tickets from any source.  From March 29, 2016 through at least September 5, 2016, the International Terms promised that all transatlantic and transpacific business class passengers could check up to three

bags at no additional charge (see paragraph 34, above).  Despite these promises, AA allowed

only two free checked bags and charged these passengers $200 to check a third.

## V.      CLASS ACTION ALLEGATIONS

71.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set

forth herein.

72.     Plaintiff brings this action as a class action for monetary relief pursuant to Rule

23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons in the United States (including the fifty states, the District of
> Columbia, the U.S. Virgin Islands, and Puerto Rico) who purchased a
> ticket for air travel on American Airlines ("AA") subject to AA promises
> that their ticket would allow the passenger to check a specified number of
> bags at no additional charge, when in fact AA required the passengers to
> pay to check one or more such bags, during the period since four years
> prior to the filing of the complaint.  ("Class Definition" or "Class")

73.     Excluded from the Class are defendants herein, and any person, firm, trust,

corporation, or other entity related to or affiliated with defendants, including without limitation

persons who are officers, directors, employees, agents, associates or partners of defendants, and

Plaintiff's Counsel and employees of their firms.

74.     This action is properly maintained as a class action.  The Class satisfies all of the

requirements of Rule 23 for maintaining a class action.

75.     **Ascertainability.**  The members of the Class (collectively "class members") are

known to AA.  Their identities are recorded in AA's business records.  AA's business records

also memorialize the statements AA made to class members, including statements in the e-ticket

confirmation emails, Domestic Terms, International Terms, Checked Baggage Policy, and Point

of Purchase terms.  AA's records also track the membership benefits of frequent flyer status of

passengers, and AA's computers receive information about passengers' status from AA's partner

airlines.  For example, Mr. Bazerman's "elite" frequent flyer status with AA partner British

Airways was known to AA.  AA's business records also report the fees that class members paid

for checked baggage throughout the class period.  Moreover, the Class Definition enables every

putative class member to identify himself or herself as a member of the Class.

76.     **Numerosity.**  The Class is so numerous that joinder of all members is

impracticable and the disposition of their claims in a class action will provide substantial benefits

to the parties and the Court.  Plaintiff believes there are thousands of members of the Class, who

are geographically dispersed throughout the United States.

77.     **Existence and predominance of common questions of law or fact.**  There are

questions of law or fact that are common to the Class, which predominate over questions

affecting any individual class member.  AA's PSS is centralized software that AA uses to

manage different parts of its business.  The PSS includes databases containing all of AA's

domestic and international passenger reservations and ticketing information as well as the

baggage fees each passenger paid.  AA's PSS determines whether domestic and international

passengers pay for checked bags when they check in for their flights.  The PSS did not

incorporate AA's contractual promises regarding checked bag fees to international and domestic

passengers.  As a result, AA systematically charged passengers for checked bags in breach of the

Contract promising passengers that AA would transport such checked bags for no additional

charge.  The common nucleus of operative facts also includes AA's standardized terms and

conditions for customer air travel described above, as well as the presentation of the same

promises to passengers through e-ticket confirmation emails and computerized displays on

AA.COM.  Questions of law are similarly common.  The elements of a breach of contract claim

are the same, or materially the same, under the laws of each state in which AA operates and in

which each AA customer in the United States entered into the Contract.  To the extent that a

breach of contract claim varies among states, those variances do not apply because the Airline Deregulation Act of 1978 preempts any additional state rules or policies that create greater passenger protections beyond those self-imposed obligations written into the Contract. Contract law is therefore uniformly applied to all class members because there are no material differences between the various states' contract laws. Accordingly, the Court can apply Massachusetts law, Texas law, or the contract laws of any of the jurisdictions within the United States with respect to the claims of all members of the Class. Common questions of law or fact include without limitation:

   a.   Whether class members performed pursuant to AA's offer when they purchased a ticket for travel on AA;

   b.   Whether the Contract was formed at the time when a class member purchased a ticket for travel on AA;

   c.   Whether the Contract promised that class members could check a specified quantity of bags at no additional charge;

   d.   Whether AA's standardized software system, AA's Passenger Service System, failed to honor the promises AA made in its Contract with its passengers;

   e.   Whether AA breached the Contract when it required class members to pay checked bag fees beyond those promised in the Contract;

   f.   Whether the e-ticket confirmation emails reflect the terms of the corresponding tickets.

   78.   **Typicality.** The claims of Plaintiff are typical of those of the class members, and Defendant has no defenses that are unique to Plaintiff.

672961.37

79.   **Adequacy of representation.**  Plaintiff will fairly and adequately protect the interests of the class and has no interests adverse or antagonistic to the interests of the other members of the class.  Plaintiff has retained competent counsel who are experienced in the prosecution of consumer class action litigation.

80.   **Superiority.**   A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein.  A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of time and expense that the prosecution of numerous individual actions would entail.  Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of in this action.  Plaintiff does not anticipate any unusual difficulties in the management of this class action.

### CAUSE OF ACTION: BREACH OF CONTRACT (all Class Members)

81.   Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

82.   Plaintiff and all other class members entered into a valid and enforceable written Contract with AA for air transportation.  Each such Contract included a promise by AA that the passenger could check a specified quantity of baggage at no additional charge.  Plaintiff and all members of the Class accepted AA's offer and fully performed their obligations under the Contract.

83.   AA nonetheless refused and failed to provide the free baggage transportation services specified by the Contract.  AA's centralized software system, the PSS, required all members of the Class to pay these baggage fees despite AA's promise to transport their baggage

for no additional charge.  As a result, AA materially breached the Contract with Plaintiff and all other members of the Class.

84.     As a direct result of AA's breach of the Contract, Plaintiff and all other members of the Class suffered actual damages in the form of bag check expenses and incurred reasonable and foreseeable economic harm.

WHEREFORE, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Defendant as follows:

A.     Certification of Plaintiff's claim as a class action, pursuant to Fed. R. Civ. P. 23(b)(2) & (3), on behalf of the proposed Class;

B.     Actual damages in an amount not less than the amount AA obtained from Plaintiff and the Class to transport checked bags in breach of the Contract;

C.     An order enjoining Defendant from charging fees beyond those promised in applicable contracts, or from denying benefits provided in applicable contracts;

D.     An award of reasonable attorneys' fees on behalf of Plaintiff and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

E.     An award of costs of suit on behalf of Plaintiff and the Class, pursuant to Texas Civil Practices and Remedies Code § 38.001 and other applicable contract law;

F.     Pre-judgment at the maximum rate of interest permitted by law;

G.     Post-judgment interest at the maximum rate of interest permitted by law; and

H.     Such other and further relief that the court may deem just and proper.

///

672961.37

///

///

### DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  July 13, 2017                    Respectfully submitted,


s/ Benjamin Edelman
Benjamin Edelman

Benjamin Edelman (BBO #663528)
LAW OFFICES OF BENJAMIN EDELMAN
169 Walnut Street
Brookline, MA 02445
Tel:    (617) 297-7360


Linda M. Dardarian
(*pro hac vice* application forthcoming)
ldardarian@gbdhlegal.com
Byron Goldstein
(*pro hac vice* application forthcoming)
brgoldstein@gbdhlegal.com
Raymond Wendell
(*pro hac vice* application forthcoming)
rwendell@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417

Attorneys for Plaintiff and the Proposed Class