**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAX BAZERMAN, individually and on behalf of others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>American AIRLINES, INC., a Delaware Corporation,<br><br>      Defendant. | Case No.: 1:17-CV-11297-WGY |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

## I.      INTRODUCTION

Plaintiff Max Bazerman ("Plaintiff"), individually and on behalf of a proposed Settlement Class of passengers on American Airlines, Inc. ("AA"), respectfully requests that the Court: (1) grant preliminary approval of the proposed Settlement Class defined below; (2) grant class certification for settlement purposes; (3) appoint him as Settlement Class Representative and his counsel as Settlement Class Counsel; (4) approve the form and manner of notice of the Settlement Agreement to the Settlement Class; and (5) schedule a fairness hearing for final approval and consideration of Plaintiff's applications for Class Counsel's attorneys' fees, expenses and costs, and a payment for his service to the Class.

In this case, Plaintiff alleges that AA has failed to honor certain contractual provisions that allow passengers to check bags for no charge. Under the proposed Settlement Agreement, approximately 700,000 AA passengers will receive notice that they may be entitled to a refund for checked bag fees. *See* Declaration of Linda M. Dardarian ("Dardarian Decl.") ¶ 33. All those who submit valid, timely claim forms and whose claims are verified against AA's records

will receive either a full cash refund plus five percent interest for their checked bag fees, or a 75% cash refund, depending on the source of their claims.  The Parties have agreed to a simple, straightforward claim form, thereby maximizing convenience to class members.  The Settlement Agreement therefore provides the Settlement Class with an outstanding result.  The Settlement Agreement is the result of serious, non-collusive, arm's-length negotiations and is fair, reasonable, and adequate.  All prerequisites for preliminary approval of the Settlement are met, and notice to class members satisfies due process.  In addition, the Settlement Class meets the standards for certification under Fed. R. Civ. P. 23(a) and (b)(3) ("Rule 23").

## II.  BACKGROUND

### A.  Factual Background

The claims at issue in this case are governed by a common set of contractual documents. First, documents available on AA's website, hereinafter referred to collectively as the "Baggage Policy," include the Conditions of Carriage (Dardarian Decl. Ex. 14), Checked Baggage Policy (*id.* Ex. D), Elite Status Benefits Page (*id.* Ex. E), Optional Service Fee Page (*id.* Ex. F), and International General Rules (*id.* Ex. G).  The Baggage Policy states that certain passengers can check some number of bags for no fee, based on their frequent flyer status, class of service, route of travel, or military status.  AA does not dispute that the Baggage Policy forms part of the contract between AA and passengers.  *Id.* ¶ 14.  Second, the "Confirmation Email" that passengers receive shortly after purchasing a ticket from AA lists the fees that will be charged for the first and second checked bags.  *See* Declaration of Max Bazerman, Ex. A.  AA's position is that the baggage fee information contained in the Confirmation Email did not modify the contract between AA and passengers.  *Id.* ¶ 15.  Plaintiff alleges that AA has breached provisions of those contractual documents that entitle some passengers to free checked bags.

2

The Conditions of Carriage provide that "[t]hese Conditions of Carriage are governed by and are to be interpreted in accordance with the laws of the State of Texas." *Id.* Ex. C at AA-BAG-000024.

**B.     Litigation History**

Plaintiff and his Counsel began investigating this case in September 2016. A detailed account of the investigation is included in the Declaration of Benjamin Edelman, filed herewith. Plaintiff filed his complaint on July 13, 2017. (ECF No. 1.) The Parties began negotiating shortly after Plaintiff served AA with the Complaint in October 2, 2017. Dardarian Decl. ¶ 17.

Since then, the Parties have engaged in a great deal of discovery, both formal and settlement-related. Plaintiff has served AA with three sets of interrogatories, one set of requests for production of documents, and two sets of requests for admissions. Dardarian Decl. ¶ 18. AA has served Plaintiff with one set of interrogatories and one set of requests for production of documents. *Id.* ¶ 19. AA has produced documents on twelve different occasions, ultimately producing over 4,400 pages of documents to Plaintiff. *Id.* In addition, Plaintiff deposed AA's 30(b)(6) witness, Shilpa Jain, on January 25, 2018. *Id.*

In preparation for mediation, AA produced to Plaintiff (for settlement purposes only) critical data regarding checked bag fee overcharges, including estimated monthly totals of certain categories of checked bag overcharges. *Id.* at ¶ 20; Declaration of Tucker Green ("Green Decl.") ¶ 9. AA does not maintain in a single or dedicated data set the information necessary to identify whether customers have been overcharged baggage fees. *Id.* ¶ 6. Instead, that information is spread across multiple AA databases. *Id.* at ¶ 4. As a result, compiling a list of affected passengers is a highly complex task. *See id.* at ¶ 8. AA retained FTI Consulting, Inc. ("FTI"), to assist with this task. *Id.* ¶ 1. Using software to search AA's various databases and employing conservative assumptions, FTI has compiled a list of potential class members that errs

3

on the side of over-inclusiveness, in that it may include customers who were not incorrectly charged or who have already received refunds. *Id.* ¶ 8, 11.

On February 16, 2018, the Parties participated in a full-day mediation with Magistrate Judge Page M. Kelley and made progress toward settlement. (*See* ECF Nos. 47, 49.) Thereafter, the Parties engaged in many informal settlement discussions as well as several telephonic status conferences before Judge Kelley. The entire mediation process and accompanying negotiations were time- and resource-intensive for both parties and ultimately succeeded in resolving this action, with the settlement agreement finalized and executed on June 7, 2018. *See* Dardarian Decl. ¶ 22.

## III. TERMS OF THE SETTLEMENT

The Proposed Settlement is included in its entirety as Exhibit 1 to the Proposed Order Granting Motion for Preliminary Approval of Class Action Settlement. The following summarizes its most important terms.

## A. The Proposed Settlement Class

The proposed "Settlement Class" consists of AA passengers who, during the class period, were charged checked bag fees in spite of provisions in either the Baggage Policy or their Confirmation Emails stating that they could check those bags for no charge. Specifically, the Settlement Class is defined as follows:

> All residents of the United States (including the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico) who:
>
> a.     traveled on American Airlines ("American");
>
> b.     at any time between July 13, 2013 and the Settlement Date (the "Class Period"), and
>
> c.     meets the criteria of either or both subsections (i) and (ii) below:

      i.       were charged a checked bag fee inconsistently with statements in American's Baggage Policy that passengers may check one or more bags for no additional charge, excluding oversized and overweight checked bags, specialty items, and sports equipment, for any of the following reasons:

            a.      At the time of check-in, the passenger held a First or Business Class ticket for a domestic flight;

            b.      At the time of check-in, the passenger held a Business Class ticket for an international flight;

            c.      At the time of check-in, the passenger held AAdvantage elite status with AA or an equivalent frequent flyer elite status with a partner airline, or traveled on the same itinerary as a passenger who held such status;

            d.      At the time of check-in, the passenger was an active U.S. Military member or the dependent of a U.S. Military member travelling on orders; or

            e.      At the time of check-in, the passenger was an active U.S. Military member on personal travel.

      ii.     were charged a checked bag fee inconsistently with a Confirmation Email received by the passenger stating eligibility to check a first bag for that ticketed trip at no additional charge.

Settlement Agreement § III.A.

For analytical purposes, Settlement Class members whose entitlement to a free checked bag derived from provisions in the Baggage Policy are referred to as the "Baggage Policy Class." Settlement Class members whose entitlement to a free checked bag derived from statements in their Confirmation Emails are referred to as the "Email Class."

**B.**     <u>**Proposed Notice to Class Members**</u>

As explained in Section II.B above, AA has compiled a list of potential members of the Settlement Class (the "Class Notice List") through reasonable searches of its business records. The Parties believe that the Class Notice List is over-inclusive of the Settlement Class in that it may include individuals who flew as part of a group, where not all individuals in the group were

entitled to check bags for free, or it may include individuals who have already received refunds from AA.  Green Decl. ¶11.

The Parties will select the "Settlement Administrator," subject to Court approval. Settlement Agreement § II.PP.  The Parties have agreed to both a short-form and a long-form version of class notice.  *See* Exs. B-C.  All individuals on the Class Notice List will receive the short-form notice by email and postal mail, along with one reminder by postal email.  Individuals who have no postal address will receive a reminder by email.  Individuals who have submitted a claim will not receive subsequent notices.  *Id.* §§ VIII.G.1-3.  Thus, all members of the Class Notice List will receive notice at least twice, and most will receive it three times, unless they submit claim forms before the reminder notices are issued.

The short-form notice contains all of the information necessary for class members to decide whether to file a claim or opt out, including: the nature of the lawsuit; the basic structure of the settlement; instructions for filing a claim, opting out, or objecting to the settlement, and the deadline for each; the consequence for failing to file a claim or opt out; the range of possible refund awards for eligible Settlement Class members; and the time, date, and location of the fairness hearing.  *See* Settlement Agreement Ex. C.  In addition, the short-form notice includes instructions for accessing the long-form notice, which contains more detailed information regarding the litigation and the range of possible refund awards, on the Settlement Administrator's website.  *Id.*

AA will bear all costs of notice and administration.  Settlement Agreement § VIII.B. None of these costs will be deducted from Settlement Class Members' awards.

## C.   **Claims Process**

Individuals are required to file a claim in order to receive refunds under the Settlement. Each notice that is mailed to individuals on the Class Notice List will be accompanied by a

simple claim form, an example of which is filed as Exhibit A. Individuals have the option of requesting refunds by check or through Paypal. *Id.*

Because not all individuals on the Class Notice List are members of the Settlement Class, each submitted claim will be subject to a manual review of AA's business records to determine whether, in fact, the individual was charged a fee for a checked bag contrary to the terms of the Baggage Policy or the Confirmation Email, and if so, the amount of the overcharge. The Parties have agreed to a claims process that allows AA to consult its records to verify the validity and amount of the claim, and gives both the individual and Class Counsel an opportunity to contest AA's determination. *See* Settlement Agreement §§ IX.C-L.

Settlement Class members will have 90 days from the start of the notice period to file a claim. *Id.* § II.H. Within 30 days after the Effective Date, American will transfer to the Settlement Administrator an amount sufficient to pay all the refunds, plus interest due, and the Settlement Administrator will make payments to Settlement Class Members with verified claims. Any remaining funds resulting from unclaimed payments will revert to AA. *Id.* § V.C.

**D.      Benefits to the Class**

Members of the Settlement Class who submit timely claim forms, and whose claims are verified through AA's business records, will receive full refunds of the fees they paid to AA for bags that should have been checked for no additional charge under the Baggage Policy, plus interest at the annual rate of 5% from July 13, 2017 through the date set by the Court for the Fairness Hearing. Settlement Agreement § IV.B.1. For bags that should have been transported for free according to statements in a Confirmation Email, AA will provide a refund equal to 75% of the checked bag fee charged. *Id.* § IV.B.2. AA will provide these refunds regardless of how many class members file claims.

**E.**     <u>Release</u>

Claims of Settlement Class Members are only released as to the specific checked bag fees that are at issue in the Settlement — that is, bags that the Settlement Class Members should have been able to check for no extra charge under the Baggage Policy, for the reasons listed in the Settlement Class definition, and first checked bags that were listed as free in a Confirmation Email.  Settlement Agreement § II.MM.  In addition, the release only applies to members of the Settlement Class to whom Notice is directed by postal mail or email and others who submit Claim Forms, and it does not apply to individuals who have opted out of the Settlement Class. *Id.* §§ II.LL; II.SS.

**F.**     <u>Class Counsel, Class Representative, and Fees</u>

The Parties have agreed to request the appointment of Plaintiff as Settlement Class Representative and Plaintiff's Counsel — Linda M. Dardarian, Byron Goldstein, and Raymond Wendell of Goldstein, Borgen, Dardarian & Ho, and Benjamin Edelman of Law Offices of Benjamin Edelman — as Class Counsel.  Settlement Agreement § III.B.  The Parties have also agreed that Plaintiff may apply for an incentive award not to exceed $2,500.  *Id.* § II.E.  Finally, the Parties agree that Plaintiff is entitled to an award of attorneys' fees and costs.  Plaintiff will apply for an award of fees and costs not to exceed $2,750,000.  AA reserves the right to contest Plaintiff's fee petition.  *Id.* § VI.B.  All three of these provisions are subject to Court approval.

**IV.**     <u>THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR APPROVAL.</u>

Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits.  It provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The court approval process has three principal steps:

1.     A preliminary approval hearing, at which the court makes a preliminary

       determination regarding the fairness, reasonableness, and adequacy of the

       settlement terms;

2.     Class members are notified of the proposed settlement and given an opportunity

       to express any objections; and

3.     A formal fairness hearing, at which the court decides whether the proposed

       settlement should be finally approved as fair, adequate, and reasonable to the

       class.

Federal Judicial Center, Manual for Complex Litigation, § 21.632-34 (4th ed. 2018).

In the First Circuit, district courts determine whether a class action settlement is fair, adequate, and reasonable by "balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)). "If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Bezdek*, 809 F.3d at 82 (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)). Other factors relevant to the preliminary fairness determination include: (1) "the complexity, expense and likely duration of the litigation"; (2) "the stage of the proceedings and the amount of discovery completed"; (3) the risks of further litigation, with respect to establishing liability and damages as well as to "maintaining the class action through the trial"; and (4) "the range of reasonableness of the settlement" in light of both "the best possible recovery" and "all of the attendant risks of litigation." *City of Detroit v. Grinnell Corp.*, 495

F.2d 448, 463 (2d Cir. 1974) (cited approvingly by First Circuit in *Nat'l Ass'n of Chain Drug Stores*, 582 F.3d at 44 n.13), *overruled on other grounds by Missouri v. Jenkins*, 491 U.S. 274 (1989).

These factors weigh in favor of approving the Settlement Agreement.

**A.    The Settlement Is the Product of Serious, Arm's-Length Negotiation.**

This Settlement Agreement is the result of a prolonged and vigorous negotiation between the Parties that began shortly after Plaintiff served AA with the Complaint.  On February 16, 2018, the Parties participated in a mediation before Magistrate Judge M. Page Kelley.  Dardarian Decl. ¶ 22.  Over the course of the months that followed, the Parties exchanged detailed information about AA's baggage charge records and countless phone calls and emails about the data from these records as well as other issues.  *Id.*  They participated in several status conferences with Magistrate Judge Kelley in order to resolve all facets of the agreement before the May 2017 deadline for Plaintiff's motion for class certification.  *Id.*  Accordingly, the Settlement Agreement is the product of an arm's length negotiation between capable and experienced counsel and is entitled to a presumption of fairness, reasonableness, and adequacy. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999).

**B.    The Complexity and Expense of Litigation Weigh in Favor of Approval.**

The complexity and expense that would be involved in litigating this case through trial stem in part from the enormous amount of data analysis involved in identifying the hundreds of thousands of AA passengers who paid checked bag fees inconsistently with provisions of the Baggage Policy and Confirmation Emails over the past four years, and the amounts of those checked bag charges.  The information needed to determine whether any individual passenger was overcharged to check a bag is highly complex and spread across multiple databases.  Green

Decl. ¶¶ 6, 11.  Performing this data analysis as part of settlement negotiations rather than in litigation has two major efficiency advantages: First, the Parties have saved significant time and effort by analyzing the data collaboratively rather than by adversarial methods.  Second, the Parties will achieve economies by verifying the data only for those passengers who actually submit claim forms.  Dardarian Decl. ¶ 28.

In addition, the Parties expect that further litigation would raise numerous complex, contested legal issues, including: (1) whether plaintiff can obtain class certification in light of the notice posted on aa.com purporting to waive the class action rights of website users; (2) whether plaintiff can obtain certification of a class that includes nonresidents of Massachusetts in light of the ruling in *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1781-84 (2017); (3) whether class litigation would be manageable; (4) whether Plaintiff's and class members' claims are limited by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713; and (5) whether the Confirmation Email results in a contractual obligation.  *See* Dardarian Decl. ¶¶ 30-31.  As a result, approval of the Settlement Agreement would obviate significant effort and expense and therefore serves judicial economy.

## C. <u>The Amount of Investigation and Discovery Completed Weighs in Favor of Approval.</u>

A class action settlement is likely appropriate for judicial approval where "sufficient evidence has been obtained through discovery to determine the adequacy of the settlement." *Rolland*, 191 F.R.D. at 10.  Here, as detailed in the Edelman and Dardarian Declarations, Plaintiff's Counsel thoroughly investigated the class claims and have engaged in extensive formal and informal discovery.  This investigation and discovery has enabled Plaintiff's Counsel to understand the scope of the problem and accurately evaluate AA's proposals during the settlement process, leading to a settlement that is fair, adequate, and reasonable in all respects. *Id.* ¶ 27.

**D.    The Risks of Further Litigation Weigh in Favor of Approval.**

Proceeding in litigation without settling would raise significant risks to Plaintiff and the Class, both with respect to obtaining and maintaining class certification, and with respect to establishing AA's liability.

Should the Court not approve the settlement, AA has represented that it will contest class certification on numerous grounds.  First, AA will argue that Plaintiff and class members who purchased their tickets on aa.com waived their class action rights by way of a page of the website entitled "Legal Information."  *See* American Airlines, Legal Information, https://www.aa.com/i18n/customer-service/support/legal-information.jsp.  In addition, Plaintiff expects AA to argue that this Court does not have personal jurisdiction over AA with respect to the claims of class members who live outside Massachusetts.  *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781-84; Dardarian Decl. ¶ 30.  Finally, Plaintiff expects AA to argue that this litigation would not be manageable as a class action due to the extensive data analysis involved in determining class membership.  *Id.*  Each of these potential arguments increases the risk that the class would either not be certified or would lose certification before final judgment.  *Id.*  By contrast, none of these concerns are relevant to certification for settlement purposes: the first two would be AA's rights to assert, and AA has waived them for settlement purposes by not opposing this motion.  Similarly, manageability of class litigation is irrelevant where the parties are obviating manageability issues through settlement.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . , for the proposal is that there be no trial.").

In addition, even if Plaintiff succeeded in obtaining and maintaining class certification, establishing liability would present risks.  In particular, Plaintiff expects AA to argue that the

12

claims at issue in this case are limited in scope by the ADA, 49 U.S.C. § 41713. (*See* AA's Answer, ECF No. 26 at 19.) Additionally, with respect to the Email Class only, Plaintiff expects AA to argue that, because the Confirmation Email is received after passengers have already agreed to the Conditions of Carriage, it cannot modify the previous agreement without additional consideration. *See* Dardarian Decl. ¶ 31. While Plaintiff is confident in the merits of both classes' claims, AA's merits arguments, especially regarding the Email Class, create additional risk and therefore weigh in favor of settlement approval. *Id.*

**E.      The Excellent Result for Class Members Weighs in Favor of Approval.**

Finally, the excellent benefits for Settlement Class members strongly support the conclusion that the Settlement Agreement is fair, adequate, and reasonable. Each member of the Baggage Policy Class who submits a timely, valid claim form will be entitled to a full refund of their incorrectly charged checked bag fees, plus interest at the rate of 5% under Texas law. Email Class Members who submit timely, valid claim forms will receive a refund equal to 75% of their incorrectly charged checked bag fees. The difference between refunds available to Baggage Policy and Email Class members is due to the extra risk that would be involved in litigating the Email Class claims, in light of AA's position that the Confirmation Email was received after the passenger agreed to the Conditions of Carriage, so statements regarding checked bag fees did not create a contractual obligation. *See* Declaration of Max Bazerman, Ex. A. The claim form is simple and straightforward, and class members will receive individually directed notice and reminders to submit claims either through postal mail or electronically prior to the filing deadline. *See* Ex. 25. Class members would not obtain a significantly greater award at trial, as additional measures of damages such as punitive damages are not recoverable under breach of contract. *See Weber v. Domel*, 48 S.W.3d 435, 437 (Ct. App. Tex. 2001).

Accordingly, the benefits available to the Settlement Class are outstanding, weighing heavily in favor of approval.

## V. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Under Rule 23(e) and due process requirements, the parties to a class action settlement must distribute notice that "is reasonably calculated to reach the class members and inform them of the existence of and the opportunity to object to the settlement." *Nilsen v. York County*, 382 F. Supp. 2d 206, 210 (D. Me. 2005) (citation omitted); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The settlement must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* W. Rubenstein, A. Conte, & H. Newberg, Newberg on Class Actions (5th ed. 2014) § 8.5. There is no requirement that all class members receive actual notice; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974); *see also* Fed. Judicial Center Manual for Complex Litigation (4th ed. 2004) § 21.311 n.882.

The Parties' proposed notice plan complies with Rule 23(e) and due process because individualized notices will be sent to every individual on the Class Notice List by both mail and email, along with an email or postcard reminder, and the Release only applies to individuals who either appear on the Class Notice List or file Claim Forms. The notice is therefore reasonably calculated to reach the Settlement Class Members. *See Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016) (individualized notice by first class mail only was sufficient).

In addition, the content of the proposed notice complies with Rule 23(e) and due process requirements. The Parties have agreed on both a short-form notice, which will be sent to

individuals on the Class Notice List by both email and mail, and a long-form notice, which individuals can access on the settlement administrator's website. The short-form notice contains all of the information necessary for class members to decide whether to file a claim or opt out, as detailed in Section III.B above. *See* Settlement Agreement Ex. C. The long-form notice contains additional detail and explanation of these subjects. *See id.* Ex. B. The content of the notice is therefore more than adequate. *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.H. 1997) ("The notice of the Proposed Settlement, to satisfy both Rule 23(e) requirements and constitutional due process protections, need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.") (citations omitted).

## VI.   THE CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES.

To be certified for the purposes of settlement, a class must meet all of the applicable Rule 23 requirements with the exception of manageability. *See Amchem Prods., Inc.*, 521 U.S. at 619. Here, both the Baggage Policy Class and the Email Class satisfy the requirements of Rule 23(a) and 23(b)(3) such that class certification is appropriate.

### A.   The Rule 23(a) Requirements Are Met.

#### 1.   The Classes Are Sufficiently Numerous that Joinder Is Impracticable.

Rule 23(a) requires that "the class be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Classes consisting of forty or more members generally meet the numerosity requirement. *See, e.g.*, *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass 2010) ("Classes of 40 or more have been found to be sufficiently numerous under Rule 23(a)(1)."). Here, based on data searches conducted by FTI, the Parties believe that each Class contains at least 1,000 members. *See* Dardarian Decl. ¶ 33.

## 2. There are Questions of Law and Fact Common to the Members of the Classes.

Common questions are discussed in Section VI.B.1 below regarding predominance.

## 3. Plaintiff's Claims Are Typical of the Claims of the Proposed Classes.

To meet typicality, "the claims of the entire class need not be identical, but the class representatives must generally 'possess the same interests and suffer the same injury' as the unnamed class members." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 296 (D. Mass. 2011) (quoting *Gen'l Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982).) Here, Plaintiff's claims are typical of the claims of both Classes. Like members of the Email Class, Plaintiff's Confirmation Email indicated that he could check a first bag for free, and he was injured when AA nonetheless charged him a fee for a first checked bag. Similarly, like members of the Baggage Policy Class, Plaintiff's frequent flyer status entitled him to check a bag for free under a provision of the Baggage Policy, and he was injured when AA nonetheless charged him a fee to check that bag. *See* Bazerman Decl. ¶¶ 5, 8, 12.

## 4. Plaintiff and Counsel Will Adequately Represent the Interests of the Proposed Classes.

Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4) if they have no conflicts of interest with the Class and are represented by qualified, competent counsel. *See Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012) (to meet adequacy requirement, "intra-class conflict" must not be "so substantial as to overbalance the common interest of the class members as a whole"). Here, Plaintiff has no conflict of interest with the proposed Classes. Bazerman Decl. ¶ 10. Plaintiff's declaration reflects his understanding of the nature of the claims and his duties to the class. *Id.* ¶¶ 8-13. He has demonstrated enthusiasm in pursuing his and class members' rights to relief. *Id.* ¶¶ 7, 11-13. Accordingly, Plaintiff will adequately represent the Classes. The qualifications of Plaintiff's Counsel, led by class action litigators with decades of

experience, and including a software engineer, are described in detail in paragraphs 3-13 of the

Dardarian Declaration and paragraphs 3-9 of the Edelman Declaration.

**B.      The Rule 23(b)(3) Requirements Are Met.**

           **1.      Common Issues Predominate Over Individualized Issues.**

Commonality and predominance are met because Plaintiff's and class members' claims

arise under a common set of standardized documents that form a contract between AA and its

passengers, and because ruling on breach of contract would not require inquiry into any

individualized issues.

           **(i)      Common Issues Predominate as to the Baggage Policy Class's Claims.**

Litigating the Baggage Policy Class's claims would involve predominantly common

questions of contract interpretation.  In particular, the success of the Baggage Policy Class would

hinge on the Court's interpretation of the Baggage Policy.  Because contracts are to be

interpreted as a whole, the Court's interpretations would apply classwide.  *See Pratt-Shaw v.*

*Pilgrim's Pride Corp.*, 122 S.W.3d 825, 829 (Ct. App. Tex. 2003) ("When interpreting a

contract, we examine the entire agreement in an effort to harmonize and give effect to all

provisions . . . ."); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("This court

is bound to read all parts of a contract together to ascertain the agreement of the parties.").  In

addition, the Court would address on a classwide basis whether or not the Class's claims are

limited in scope under the Airline Deregulation Act.

           **(ii)      Common Issues Predominate as to the Email Class's Claims.**

Similarly, litigation of the Email Class's claims would largely revolve around a single

common question: whether language in the Confirmation Email regarding checked bag fees

modified the contract between AA and passengers.  Plaintiff would argue that it does, because

the COC states that "[y]our ticket and the following Conditions of Carriage constitute the

17

contract . . . ." Passengers do not receive any ticket from AA apart from the Confirmation Email. *See,* Dardarian Decl. Ex. H, (Deposition of Shilpa Jain) at 189:9-11 (AA does not send paper tickets to any passengers). In addition, the Confirmation Email contains a standardized legal notice stating that the COC is incorporated by reference into the contract between AA and passengers, which indicates that the Confirmation Email, too, is part of the contract. *See* Bazerman Decl. Ex. A. These arguments rely on uniform language and therefore apply classwide.

### (iii)     Choice of Law Does Not Raise Individualized Issues.

Even though class members reside throughout the United States, choice-of-law does not raise individualized questions. Texas law will apply to all claims. First, the COC contains a choice-of-law clause providing that Texas law governs. Ex. C at AA-BAG-000024. AA has stipulated that, from July 13, 2012 to the present, the Conditions of Carriage have applied to all travel on AA flights. *See* Ex. I, Stipulation No. 7.

Even if this choice-of-law provision did not apply classwide, courts certify multistate class actions where the claims at issue are based on laws that have minimal state-by-state variations as applied to the parties' claims. For example, in *Overka v. American Airlines, Inc.*, this Court certified a class based on claims that occurred in many states because the states' laws of unjust enrichment were not materially different. 265 F.R.D. 14, 20 (D. Mass. 2010) ("The question before the Court here is not whether the laws of multiple states are identical, but whether the Court can manage the differences."). Such an approach is appropriate here because of the substantial similarity of contract law across states. *See American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995) (observing that nationally uniform travel contracts drafted by airlines could be enforced under state laws with little risk of "nonuniform adjudication" because "contract law is not at its core diverse, nonuniform, and confusing"); *see also* Dardarian Decl. ¶

18

35, Ex. J (chart confirming that the contract laws of the fifty states do not differ in any material respects).

Indeed, many courts have determined that there is no material variation among states' contract laws. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013) (affirming class certification of multistate class alleging breach of contract, and stating, "[a]s courts have noted, state contract law defines breach consistently such that the question will usually be the same in all jurisdictions.") (citations omitted); *see also Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) ("A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey."), *abrogated in part on other grounds by Bridge v. Phx. Bond & Indem. Co.,* 553 U.S. 639 (2008).

## 2. A Class Action Is the Superior Method for Resolving this Dispute.

In determining whether a class action is superior to other available methods of adjudicating a controversy, courts consider the factors enumerated under Fed. R. Civ. P. 23(b)(3). In the settlement context, the most important factor is "the class members' interests in individually controlling the prosecution or defense of separate actions." *See, e.g.*, *In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (class settlement superior where "the amounts of the claims of many of the Settlement Class Members are too small to justify the expense of individual actions"). Here, the class members have little such interest, weighing strongly in favor of class certification. AA's checked bag fees range from $25 to $200 per bag. *See* Ex. D at AA-BAG-1647; Ex. E at 1-17. Thus, many class members' damages are far too small to justify the costs of a lawsuit. A class action is their only realistic means of obtaining relief, making it superior to other methods of adjudication. *See, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 23 (1st Cir. 2015). Class certification should therefore be granted for settlement purposes.

## C. The Court Should Appoint Plaintiff as Settlement Class Representative and Plaintiff's Counsel as Settlement Class Counsel.

Plaintiff is an adequate class representative and therefore seeks appointment as Settlement Class Representative. Plaintiff also seeks appointment of his Counsel — Linda M. Dardarian, Byron Goldstein, and Raymond Wendell of Goldstein, Borgen, Dardarian & Ho and Benjamin Edelman of Law Offices of Benjamin Edelman — as Class Counsel pursuant to Rule 23(g). Counsel's qualifications are set out in detail in the Dardarian Declaration and the Edelman Declaration.

## VII.   CONCLUSION

Plaintiff respectfully requests that the Court: (1) preliminarily approve the Settlement Agreement; (2) certify the proposed Settlement Class; (3) appoint him Settlement Class Representative and his counsel as Settlement Class Counsel; (4) approve the form and manner of notice of the Settlement to the Settlement Class; and (5) schedule a Fairness Hearing, as set out in greater detail in the attached Proposed Preliminary Approval Order.

Dated:  June 7, 2018                 Respectfully submitted,

s/ Linda M. Dardarian
Linda M. Dardarian (*pro hac vice*)
ldardarian@gbdhlegal.com
Byron Goldstein (*pro hac vice*)
brgoldstein@gbdhlegal.com
Raymond Wendell (*pro hac vice*)
rwendell@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417

Benjamin Edelman (BBO #663528)
LAW OFFICES OF BENJAMIN EDELMAN
169 Walnut Street
Brookline, MA 02445
Tel:    (617) 297-7360

Attorneys for Plaintiff and the Proposed Class

710443.17

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated on the NEF as non-registered participants on June 7, 2018.

/s/ Linda M. Dardarian
Linda M. Dardarian