IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAX BAZERMAN, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN AIRLINES, INC., a Delaware Corporation,<br><br>Defendant. | Case No.: 1:17-CV-11297-WGY |

**DECLARATION OF LINDA M. DARDARIAN IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Linda M. Dardarian, hereby declare as follows:

1. I am a member in good standing of the Bar of the State of California and a partner at the law firm Goldstein Borgen Dardarian & Ho ("GBDH"), in Oakland, California. I am lead co-counsel representing Plaintiff Max Bazerman in this matter. I am providing this declaration of counsel in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them.

2. The proposed Settlement Agreement and Release ("Settlement"), is attached as Exhibit 1 to the [Proposed] Order (1) Granting Preliminary Approval of Class Action Settlement; (2) Granting Certification of a Settlement Class; (3) Directing Notice to the Settlement Class; and (4) Setting Date for Fairness Hearing, filed herewith. I consider the Settlement to be an excellent result for the proposed Settlement Class given the benefits created for the Settlement Class and the risks of continued litigation. I strongly believe that the

1

Settlement is fair, adequate, and reasonable, and that it is in the best interests of the Settlement Class.

## Qualifications of Plaintiff's Counsel

3. I am a 1987 graduate of Berkeley Law School (formerly Boalt Hall School of Law at University of California, Berkeley). I have been a member in good standing of the California State Bar since 1987, and I am admitted to practice before the United States District Courts for the Northern, Central, and Eastern Districts of California, the United States Courts of Appeals for the Fifth, Ninth and Eleventh Circuits, as well as the United States Supreme Court. From September 1991 until December 1997, I was an associate at GBDH, and I became a partner in January 1998. A true and correct copy of my resume, which accurately summarizes my legal experience, is attached hereto as Exhibit A.

4. GBDH was founded in Oakland, California in 1972. For the past 46 years, GBDH has litigated class and complex public interest cases in state and federal courts nationally, representing classes of individuals against large companies and public entities in a variety of areas, including consumer protection, employment discrimination, disability rights, access to public accommodations, wage and hour violations, voting rights, and environmental justice. GBDH has long been recognized as one of the premier Plaintiffs' civil rights, employment discrimination, disability rights, and wage and hour class action law firms in the country. GBDH has successfully litigated and resolved landmark class action and complex cases against defendants in many different industries, including technology companies, grocery and retail stores, restaurant chains, and financial services companies. GBDH has won billions of dollars of relief for Plaintiffs and class members, and has obtained systemic changes in unlawful and unfair practices by businesses and governmental entities alike. Every year since 2004, GBDH partners have been named "Northern California Super Lawyers" by their peers, in recognition of their outstanding legal achievements and high ethical standards. GBDH partners are rated "AV Preeminent" by Martindale Hubbell, indicating that our peers rank us at the

highest level of professional excellence. A true and correct copy of GBDH's abbreviated resume is attached hereto as Exhibit B.

5. Some of the significant or recent consumer, civil rights, and workers' rights class actions my firm has litigated include the following:

a. *Willits, et al. v. City of Los Angeles*, No. 10-cv-05782 CBM (RZx) (C.D. Cal.), a certified class action on behalf of all persons with mobility disabilities who have been denied access to the City of Los Angeles's pedestrian right of way, in which I and my firm are co-lead class counsel. *See Willits v. City of Los Angeles*, No. CV 10-05782 CBM RZX, 2011 WL 7767305, at *5 (C.D. Cal. Jan. 3, 2011). Following a successful motion for class certification and motion for partial summary judgment, Plaintiffs successfully obtained a systemic settlement, approved in August 2016, that requires the City of Los Angeles to spend in excess of $1.37 billion over thirty years remediating access barriers that prevent individuals with mobility disabilities from having full and equal enjoyment of the City's pedestrian right of way, and requires that all new construction and alterations performed in the City's pedestrian right of way comply with the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the California Building Code.

b. *Munguia-Brown, et al. v. Equity Residential*, No. 4:16-cv-01225-JSW (N.D. Cal.), a certified class action, in which I am lead class counsel, against one of the nation's largest private landlords for charging unlawful and excessive late fees to 120,000 tenants in California. The U.S. District Court for the Northern District of California certified the case as a class action October 23, 2017, and appointed GBDH, along with co-counsel, as class counsel. *See Munguia-Brown v. Equity Residential*, No. C 16-01225 JSW, 2017 WL 4838822, at *1 (N.D. Cal. Oct. 23, 2017).

c. *Hines, et al. v. City of Portland*, No. 3:18-cv-00869-HZ (D. Or.), a $113 million class action settlement, in which I am co-lead class counsel, requiring the City of Portland to improve the accessibility of its pedestrian right of way for residents and visitors with

mobility disabilities by installing and upgrading thousands of curb ramps throughout the City's sidewalk system. Preliminary approval of the settlement was granted on June 4, 2018.

       d.    *In Re Uber FCRA Litigation,* No. 3:14-cv-05200-EMC (N.D. Cal.), a nationwide class action on behalf of Uber drivers and applicants for driver positions alleging that Uber violated the Fair Credit Report Act and California law regarding the authorization and procurement of background checks. This action resulted in a $7.5 million class settlement that received final approval in February 2018.

       e.    *McBain v. Behr Paint Corporation, et al.,* No. RG17855986 (Alameda County Superior Court), a nationwide and California collective and class action alleging that Defendants misclassified their territory representatives as exempt from overtime. Preliminary approval was granted on April 20, 2018 for a $5 million class and collective action settlement.

       f.    *Reynoldson, et al. v. City of Seattle*, No. 15-cv-01608-BJR (W.D. Wash.), a $300 million settlement on behalf of a class of Seattle residents and visitors with mobility disabilities, in which I and my firm are co-lead class counsel, requiring the City of Seattle to install and remediate tens of thousands of curb ramps throughout the City's pedestrian right of way. The settlement received final approval in November 2017.

       g.    *Ochoa, et al. v. City of Long Beach*, No. 14-cv-04307 (C.D. Cal.), a $200 million class action settlement in which I and my firm are co-lead class counsel, to improve accessibility of the pedestrian right of way in the City of Long Beach for individuals with mobility disabilities. The settlement received final approval in October 2017.

       h.    *Willey v. Techtronic Industries North America, Inc.*, No. RG 16806307 (Alameda County Superior Court), a wage and hour class action on behalf of store representatives and field representatives to recover unpaid overtime wages and payments for missed meal periods, inaccurate wage statements, and out-of-pocket expenses. This action resulted in a $3.5 million class settlement that received final approval in August 2017.

       i.    *Talamantes v. PPG Industries, Inc.*, 13-cv-04062-WHO (N.D. Cal), an unpaid overtime class action on behalf of individuals who worked as territory managers for PPG

4

Industries and related subsidiaries assisting with merchandising and selling PPG's paint products at Home Depot stores. The case resulted in a $5 million class settlement that was approved by the court in January 2016.

j. *Olson, et al v. Sutter Health*, No. RG06-302354 (Alameda Cnty. Super. Ct.), a class action settlement in which I and my firm are lead class counsel, with a ten-year consent decree to requiring the Sutter Health hospital system throughout Northern California to remove architectural barriers in all Sutter Health medical care facilities, install accessible medical equipment, and enhance policies and training programs to increase access to healthcare services for persons with mobility, visual, hearing and speech disabilities.

k. *Garcia v. Oracle*, JCCP No. 004597 (Alameda County Superior Court), a wage and hour class action on behalf of quality assurance engineers, customer support engineers, and project managers who have worked for Oracle (and PeopleSoft) in California who were denied required overtime pay and proper off-duty meal periods. The case resulted in a $35 million settlement that was approved by the court in 2012.

l. *McClain v. Lufkin Industries, Inc.*, No. 97-cv-0063 (E.D. Tex.), a race discrimination class action on behalf of approximately 1,000 African American workers, alleging that Lufkin's subjective employment practices had an unlawful disparate impact on African Americans in initial job assignments and promotions. I was one of the GBDH lawyers representing the Plaintiff in this action. Litigated over a 13-year period including trial and multiple appeals, final judgment issued in 2010, and included a permanent injunction prohibiting Lufkin from continuing to discriminate against African American workers and requiring Lufkin to implement objective and non-discretionary promotion procedures, and provided more than $10.5 million in monetary relief.

m. *Lin v. Siebel Software Systems, Inc.*, No. CIV 435601 (San Mateo Sup. Ct.): a class action lawsuit under the California Labor Code for unpaid overtime compensation on behalf of software engineers and senior software engineers. This case, in which I was co-lead counsel for the class, resulted in a $27.5 million settlement in April 2007.

n. *Butler, et al. v. Countrywide Home Loans, Inc.*, No. BC268250 (Los Angeles Sup.Ct.), a class action lawsuit under the California Labor Code and Unfair Competition Act for overtime and other compensation on behalf of Account Executives in Countrywide's call centers in California. This case, in which I was Lead Class Counsel, resulted in a $30 million settlement that was approved by the court in June 2005.

o. *Butler v. Home Depot*, No. C94-4335-SI (N.D. Cal.), a gender discrimination class action, for which I was among class counsel and which resulted in a consent decree covering employees in Home Depot's western division. The Home Depot settlement provided $87.5 million in monetary relief and extensive injunctive relief expanding employment opportunities for the class of female employees and applicants.

p. *Shores v. Publix, Inc.*, No. 95-1162-CIV-T-25E (M.D. Fla.), a gender discrimination class action, in which I was class counsel, obtained a settlement that included a companywide consent decree providing extensive injunctive relief to improve assignment, training, compensation and promotion opportunities for female employees, and payment of $81.5 million in monetary relief.

q. *Kraszewski v. State Farm General Ins. Co.*, No. C-79-1261-TEH (N.D. Cal.), a gender discrimination case brought on behalf of women who were denied positions as insurance agents, which resulted in over $200 million in monetary relief to the class and extensive injunctive relief. I was among class counsel on this action as well.

r. *Haynes v. Shoney's, Inc.*, No. 89-30093 RV (N.D. Fla.), a nationwide class action on behalf of African American employees of Shoney's Restaurants. The consent decree settling the case provided $132.5 million in monetary relief as well as extensive injunctive relief. Subsequent to the settlement, the University of Georgia Press published a book describing this action, S. Watkins, The Black O: Racism and Redemption in an American Corporate Empire (1997).

s. *Ridgeway v. Denny's, Inc.*, No. C-93-20202 JW (N.D. Cal.), a statewide class action on behalf of African American customers of Denny's Restaurants in California that

was settled for $32.5 million in monetary relief and extensive injunctive relief. The positive impact the relief in this case had on Denny's corporate culture is the subject of a book, J. Adamson, The Denny's Story: How a Company in Crisis Resurrected its Good Name (2000) and has been featured in a number of articles, including Fortune magazine ("Guess Who's Coming to Denny's," August 3, 1998), and an episode of "60 Minutes."

t. *Stender v. Lucky Stores*, No. C-88-1467 MHP (N.D. Cal.), a gender discrimination class action on behalf of female employees of Lucky Stores in Northern California, in which I was among class counsel. The Consent Decree entered in this case provided for extensive changes to Lucky's personnel and promotion practices and resulted in monetary relief of approximately $80 million.

6. I have been responsible for all facets of class action and other complex litigation, from pre-filing investigation through trial and appeal, and settlement. As set forth above, I have been lead or co-lead counsel in many significant class and complex actions. The class and collective actions I have litigated throughout the past twenty-seven years have led to favorable class action settlements that have recouped substantial damages on behalf of plaintiffs and class members and resulted in significant injunctive relief.

7. In addition to my case work, I often speak on disability rights, employment, litigation, and class action issues at continuing legal education events, including making presentations to the American Bar Association (ABA), the Disability Rights Bar Association, the Law Seminars International, the CSUN International Conference on Technology for People with Disabilities, and the National Employment Lawyers Association (NELA). I have also taught at Stanford Law School's Advocacy Skills Workshop.

8. I have served as Executive Co-Editor of the Fourth Edition of Lindemann & Grossman, Employment Discrimination Law (2007), the leading treatise on employment discrimination law. I was also the Executive Co-Editor for the 2002, 2007 and 2008 Supplements of that treatise. I received *California Lawyer Magazine*'s California Lawyer of the Year ("CLAY") Award in 2000 and 2014 for achievement in Disability Rights, and recently was

7

one of a group of four finalists for the Public Justice Trial Lawyer of the Year Award for impact achieved by the *Willits v. City of Los Angeles* case. I have been designated as a "Super Lawyer" for Northern California every year since 2005, Super Lawyers "Attorney of the Year" in Labor and Employment Law for Oakland, California in 2017, and one of Northern California Top 50 Women Lawyers in 2009. I am rated as an "AV Preeminent" attorney by Martindale Hubble and have been recognized as one of "The Best Lawyers in America" every year since 2010. In addition, I have received honors from the American Council of the Blind and the American Foundation for the Blind for my work on behalf of people with visual impairments and received the World Institute on Disability's Disability Leadership Award in 2015.

9. Other GBDH attorneys working on this matter include my associates Byron Goldstein and Raymond Wendell. Mr. Goldstein joined GBDH in July 2014. He received a B.B.A from Emory University, a M.Sc. from the School of Oriental and African Studies, and a J.D. from Columbia Law School in 2007. He became a member of the New York bar in 2008 and the California bar in 2013. He clerked for the Honorable UW Clemon, of the Northern District of Alabama. Before clerking, he practiced with Sidley Austin LLP in New York City. After clerking, he worked as a public defender for juveniles for the Legal Aid City in New York City and practiced with a litigation boutique, Clarence, Dyer & Cohen in San Francisco. At GBDH, he has worked on a range of class and collective actions in federal courts and California state courts involving consumer, employment, and other public interest subject matters. Super Lawyers has selected him as a "Rising Star" since 2016. He has been counsel, along with other attorneys at GBDH, in the *McBain v. Behr Paint Corporation, et al.,* No. RG17855986 (Alameda County Superior Court), *Willey v. TTI Industries*, RG16806307 (Alameda Cnty. Super. Ct.), and *Talamantes v. PPG Industries, Inc.*, 13-cv-4062-WHO (N.D. Cal.) class actions described above, among others.

10. Mr. Wendell joined GBDH in September 2014. Mr. Wendell graduated cum laude from Harvard Law School in 2013, where he served as an editor on the Harvard Law Review. He is admitted to practice in California and before the United States District Courts for

the Central and Northern Districts of California. Prior to joining GBDH, Mr. Wendell worked as a judicial law clerk for the Honorable Marilyn L. Huff of the United States District Court, Southern District of California. Super Lawyers has selected him as a "Rising Star" since 2017. Mr. Wendell has been certified as class counsel in a variety of cases, including *Reynoldson v. City of Seattle*, No. 15-cv-01608-BRJ (W.D. Wash.); *Ochoa v. City of Long Beach*, No. 14-cv-04307 (C.D. Cal.), *Willits v. City of Los Angeles,* No. 10-cv-05782 CBM (RZx) (C.D. Cal.); *Ayala v. U.S. Xpress, Inc.*, No. 5:16-cv-00137-GW-KK (C.D. Cal.) (a wage-and-hour case on behalf of California-based truck drivers), and *Abarca v. Werner Enterprises, Inc.*, No. 8:14-cv-00319-JFB-MDN (D. Neb.) (a wage-and-hour case on behalf of a nationwide class of truck drivers).

11. The qualifications of my co-counsel, Benjamin Edelman to serve as class counsel with my firm in this case are set forth in the Declaration of Benjamin Edelman, filed herewith.

12. The named Plaintiff and proposed Class Representative is jointly represented by Plaintiff's counsel. The firms have been working cooperatively in this matter, and have divided this work so that tasks are accomplished efficiently and without duplication and will continue to do so going forward.

13. GBDH has committed to supporting this litigation with adequate resources, including professional and para-professional staffing, and litigation costs. Our firm has handled many large class actions both alone and in conjunction with co-counsel firms. Our firm will continue to commit the resources required to represent the class effectively through the conclusion of this case. To my knowledge, GBDH has no conflicts of interest that would prevent the firm from providing zealous representation of the named Plaintiff and the class.

**Litigation History and Background to the Settlement**

14. The claims at issue in this case are governed by a common set of contractual documents. The first set, hereinafter referred to collectively as the "Baggage Policy," include the following documents available on American Airlines' website:

a. The Conditions of Carriage. A true and correct copy of the version of the Conditions of Carriage effective on June 30, 2017, Bates Stamped AA-BAG-000001-24, is attached hereto as Exhibit C;

b. The Checked Baggage Policy. A true and correct copy of the version of the Checked Baggage Policy effective on July 7, 2017, Bates Stamped AA-BAG-001645-48, is attached hereto as Exhibit D;

c. The Elite Status Benefits Page. A true and correct copy of the version of the Elite Status Benefits Page effective on June 6, 2018, available at https://www.aa.com/i18n/aadvantage-program/elite-status/elite-status-benefits.jsp, is attached hereto as Exhibit E;

d. The Optional Service Fees Page. A true and correct copy of the version of the Optional Service Fees Page effective on June 6, 2018, available at https://www.aa.com/i18n/customer-service/support/optional-service-fees.jsp, is attached hereto as Exhibit F; and

e. The International General Rules. A true and correct copy of the version of the International General Rules effective on November 15, 2016, Bates Stamped AA-BAG004092-4202, is attached hereto as Exhibit G.

American Airlines ("AA") has represented that it does not dispute that the Baggage Policy forms part of the contract between AA and passengers.

15. The second contractual document at issue is the "Confirmation Email" that passengers receive shortly after purchasing a ticket from AA lists the fees that will be charged for the first and second checked bags. *See, e.g.,* Declaration of Max Bazerman, Ex. A. AA has represented that its position is that the baggage fee information contained in the Confirmation Email did not modify the contract between AA and passengers. Plaintiff alleges that AA has breached provisions of the Baggage Policy and Confirmation Email contractual documents that entitle some passengers to free checked bags.

16. All versions of the Conditions of Carriage from the Class Period include a clause stating, "[t]hese Conditions of Carriage are governed by and are to be interpreted in accordance with the laws of the State of Texas." *See* Ex. C at AA-BAG-000024.

17. The Parties began engaging in efforts to settle this case shortly after Plaintiff served AA with the Complaint. Fourteen days before the Scheduling Conference, pursuant to L.R. 16.1(c), Plaintiff presented AA with a written settlement proposal in October 2017. The Parties began discussions regarding the possibility of settlement almost immediately thereafter.

18. Since then, the Parties have engaged in a great deal of discovery, both formal and settlement-related. Plaintiff has served AA with three sets of interrogatories, one set of requests for production of documents, and two sets of requests for admission. Within two weeks of the Scheduling Conference, Plaintiff served Defendant with his First Set of Interrogatories and First Set of Requests for Production, followed three weeks later with a Notice of Corporate Deposition of Defendant under Federal Rule of Civil Procedure 30(b)(6), and a week later with deposition notices for the four employees of Defendant that Defendant identified in its Initial Disclosures. Plaintiff served his First Set of Requests for Admission and Second Set of Interrogatories on December 14, 2017. Thereafter, Plaintiff served AA with additional written discovery, including further sets of requests for admission, requests for production, and interrogatories.

19. AA has served Plaintiff with one set of interrogatories and one set of requests for production of documents. Defendant served written responses to Plaintiff's First Set of Interrogatories and First Set of Requests for Production, and began document production on November 7, 2017. Defendant made eleven supplemental document productions, ultimately producing over 4,400 pages of documents. In addition, Plaintiff deposed AA's 30(b)(6) witness, Shilpa Jain, on January 25, 2018. Attached hereto as Exhibit H is a true and correct copy of relevant excerpts of the Deposition of Shilpa Jain.

20. In preparation for mediation, AA produced critical data with respect to the alleged contract breaches, including monthly totals of the alleged breaches broken down by type

of class of service, frequent flyer status, route, and whether the alleged breach occurred with respect to the first, second, third, fourth, or fifth checked bag. AA informed Plaintiff that it had hired an expert, FTI Consulting, Inc. ("FTI"), to examine the scope of alleged breaches by analyzing AA's complex business records. As part of this process, AA provided to Plaintiff over 4,400 lines of the software code that FTI had created to analyze this problem. In addition, AA facilitated a joint conference call with Plaintiff's Counsel and an FTI representative so that Plaintiff's Counsel could inquire further into FTI's data analysis. FTI's data analysis is described in greater detail in the Declaration of Tucker Green, filed herewith.

21. Throughout the discovery and mediation process, the Parties also regularly held detailed, substantive meet-and-confer communications, through correspondence and telephonic meetings, regarding the Parties' claims and defenses, written discovery, depositions, data gathering and production, settlement, and preparation for mediation, class certification, and trial.

22. On February 16, 2018, the Parties participated in a full-day mediation before Magistrate Judge Kelley. Although the Parties did not resolve the case then, with Judge Kelley's assistance, the Parties identified the critical issues for litigation and mediation purposes, and agreed to continue negotiations. Over the course of the months that followed, the Parties exchanged detailed information about AA's baggage charge records and had numerous phone calls and emails about the data from these records, as well as other issues. They participated in several status conferences with Magistrate Judge Kelley in order to resolve all facets of the agreement before the May 2017 deadline for Plaintiff's motion for class certification. The entire mediation process and accompanying negotiations were time- and resource-intensive for both parties and ultimately succeeded in resolving this action, with the Settlement Agreement finalized and executed on June 7, 2018.

**Fairness, Adequacy, and Reasonableness of the Settlement**

23. In my professional opinion, based on Plaintiff's investigation and evaluation of the claims at issue in this case, I believe that the proposed Settlement Agreement is more than

fair, reasonable, and adequate, in that it provides excellent benefits to the Class, particularly in light of the risks of continued litigation.

24. The Settlement Agreement provides outstanding relief to the Class. Members of the Settlement Class who submit timely claim forms, and whose claims are verified through AA's business records, will receive full refunds of the fees they paid to AA for bags that should have been checked for no additional charge under the Baggage Policy, plus interest at the annual rate of 5% from July 13, 2017 through the date set by the Court for the Fairness Hearing. Settlement Agreement § IV.B.i. For bags that Plaintiff alleges should have been transported for free according to statements in a Confirmation Email (which AA vigorously disputes), AA will provide a refund equal to 75% of the checked bag fee charged. *Id.* § IV.B.ii. AA will provide these refunds regardless of how many class members file claims. Moreover, the costs of settlement administration will have no effect on Class Member refunds, and any awards of attorneys' fees, expenses and costs to Plaintiffs' Counsel and incentive payment to Plaintiff will be paid separately by AA. In my experience, a settlement that enables class members to recover between 75% and 100% of what they would be entitled to if they prevailed at trial is exceptional.

25. Members of the Settlement Class can obtain a refund through a simple, straightforward process. Class members will receive individually directed notices, by mail and email, explaining the case in plain language, along with two to three reminder notices. Settlement Agreement § VIII.G. The proposed class notice complies with the illustrations and guidance for class action notices provided by the Federal Judicial Center. *See* Settlement Agreement Exs. B, C. In addition, completing and submitting the claim form requires little effort on the part of members of the Settlement Class. Individuals need only provide their name; correct their contact information (if applicable); confirm that they are United States residents; select a payment method; and sign the form. The claim form, as well as all forms of the notice, includes the range of checked bag fee refunds that Settlement Class Members who submit claims will receive on a per-bag basis. *See id.* Exs. A-D. Settlement Class Members do not need to provide any records, nor do they have to swear under penalty of perjury that the

information on the claim form is correct, in order to claim a refund. In my experience, class notices and claim forms are rarely so straightforward. I believe that the simplicity of this process will assist members of the Settlement Class in obtaining refunds.

26. The Release of Claims applies only to AA passengers who meet the Settlement Class definition and who are either on the Class List of passengers to whom Class Notice will be sent by the Settlement Administrator, or who may otherwise find out about the Settlement and submit a Claim Form. In addition, the Release only covers claims for Baggage Policy Bag and Email Confirmation Bag Charges during the Class Period. This careful tailoring of the Release further demonstrates that the Settlement is fair, adequate and reasonable, and supports its approval.

27. Plaintiff's Counsel thoroughly investigated the class claims and have engaged in extensive formal and informal discovery. This investigation and discovery has enabled Plaintiff's Counsel to understand the scope of the problem and accurately evaluate AA's proposals during the settlement process, leading to a settlement that is fair, adequate, and reasonable in all respects.

28. In addition, the risks and expenses that would be involved in litigating this case through trial support approval of the Settlement Agreement. The complexity and expense that would be involved in litigation stem in part from the enormous amount of data analysis involved in identifying the hundreds of thousands of AA passengers who paid checked bag fees inconsistently with provisions of the Baggage Policy and Confirmation Emails over the five-year period covered by the case (four years prior to date that Plaintiff filed the Complaint), and the amounts of those checked bag charges. Performing this data analysis as part of settlement negotiations rather than in litigation has two major efficiency advantages. First, the Parties have saved significant time and effort by analyzing the data collaboratively rather than by adversarial methods. Second, the Parties will achieve economies by verifying only the claims of those passengers who actually submit claim forms, a process that may involve manually reviewing passenger records, as further described in the Declaration of Tucker Green, filed herewith.

29. In addition, the Parties expect that further litigation would raise numerous complex, contested legal issues regarding both class certification and the merits. As a result of these contested issues, approval of the Settlement Agreement would obviate significant effort and expense and therefore serves judicial economy. By contrast, proceeding in litigation without settling would raise significant risks to Plaintiff and the Class, both with respect to obtaining and maintaining class certification, and with respect to establishing AA's liability.

30. Should the Court not approve the settlement, AA has represented that it will contest class certification on numerous grounds. First, AA will argue that Plaintiff and class members who purchased their tickets on aa.com waived their class action rights by way of a page of the website entitled "Legal Information." *See* American Airlines, Legal Information, https://www.aa.com/i18n/customer-service/support/legal-information.jsp. In addition, Plaintiff expects AA to argue that this Court does not have personal jurisdiction over AA with respect to the claims of class members who live outside Massachusetts. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781-84. Finally, Plaintiff expects AA to argue that this litigation would not be manageable as a class action due to the extensive data analysis involved in determining class membership. Each of these potential arguments increases the risk that the class would either not be certified or would lose certification before final judgment. By contrast, none of these concerns are relevant to certification for settlement purposes: the first two would be AA's rights to assert, and AA has waived them for settlement purposes by not opposing this motion for preliminary approval of the Settlement.

31. In addition, even if Plaintiff succeeded in obtaining and maintaining class certification, establishing liability would present risks. In particular, Plaintiff expects AA to argue that the claims at issue in this case are limited in scope by the Airline Deregulation Act, 49 U.S.C. § 41713. Additionally, with respect to the passengers with Confirmation Email claims only, Plaintiff expects AA to argue that, because the Confirmation Email is received after passengers have already agreed to the Conditions of Carriage, it cannot modify the previous agreement without additional consideration. While Plaintiff is confident in the merits of both

15

claims, AA's merits arguments, especially regarding the Confirmation Email claim, create additional risk and therefore weigh in favor of settlement approval.

## Settlement Class Certification

32. For the purposes of settlement, the Settlement Class for both the Baggage Policy and the Confirmation Email claims meet the standards for class certification under Rules 23(a) and (b)(3), as explained in the Motion for Preliminary Approval of Class Action Settlement, filed herewith.

33. I have discussed the size of the Settlement Class with AA's counsel. Due to the nature of AA's business records and the fact that FTI's data analysis methods were designed to yield an over-inclusive Class Notice List, the Parties do not know the precise size of the Class. The current estimate for the over-inclusive Class List is that it includes more than 700,000 individuals. For purposes of numerosity, the Parties can confidently estimate that there are more than 100,000 passengers with Baggage Policy claims, and more than 1,000 passengers with Confirmation Email claims.

34. Regarding the commonality and predominance requirements, even though class members reside throughout the United States, choice-of-law does not raise individualized questions. Texas law will apply to all claims. First, the Conditions of Carriage contain a choice-of-law provision providing that Texas law governs. *See e.g.,* Ex. C at AA-BAG-000024. Attached hereto as Exhibit I is a true and correct copy of a set of Stipulations that the Parties executed on April 24, 2018. Pursuant to Stipulation No. 7, AA has stipulated that, from July 13, 2013 to the present, the Conditions of Carriage have applied to all travel on AA flights.

35. In the alternative, even if Texas law does not apply to consumers who entered into contracts with AA in other states, the contract laws of the fifty states do not differ in material respects. Attached as Ex. J hereto is a chart listing the relevant contract laws of the fifty states. The chart includes the following tenets of contract law that would be relevant to this case in further litigation:

16

a. **Elements for Breach of Contract Claim:** Included because Plaintiff and the Class allege that AA breached its contractual obligation to transport certain checked bags at no addition cost.

b. **Ambiguities Interpreted Against the Drafter:** Included because, in further litigation, Plaintiff would have argued that certain ambiguities in the Baggage Policy and Confirmation Emails should uniformly be resolved in the Class's favor.

c. **How to Reconcile Multiple Writings Forming a Contract:** Included because Plaintiff's position is that multiple documents comprise the contract between AA and passengers, including all of the webpages that make up the Baggage Policy, along with the Confirmation Email.

d. **Specific Terms Govern Over General Terms:** Included because Plaintiff alleges that, in many instances, the Baggage Policy creates exceptions to otherwise applicable checked bag fees based on a passenger's class of service, frequent flyer status, route of travel, or military status, and that these specific provisions control.

e. **Contract Terms Must Be Definite:** Included because, in further litigation, Plaintiff would have argued that the Confirmation Email creates a contractual obligation with respect to free checked bags because the Conditions of Carriage, standing alone, is not sufficiently definite to constitute a contract between AA and passengers.

f. **Contracts Construed as a Whole:** Included because, in further litigation, Plaintiff would have asserted that certain apparent contradictions in the Baggage Policy and Confirmation Email should be construed in a uniform manner classwide.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed June 7, 2018, in Oakland, CA.

    /s/Linda M. Dardarian
    Linda M. Dardarian

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated on the NEF as non-registered participants on June 7, 2018.

/s/ Linda M. Dardarian
Linda M. Dardarian