**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAX BAZERMAN, individually and on behalf of others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>AMERICAN AIRLINES, INC., a Delaware Corporation,<br><br>      Defendant. | Case No.: 1:17-CV-11297-WGY |

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES, AND MEMORANDUM IN SUPPORT THEREOF

Plaintiff Max Bazerman, on behalf of the Settlement Class, hereby respectfully moves for an award of $2,701,666.29 in attorneys' fees and $48,333.71 in costs and expenses.

## I.   INTRODUCTION

As part of this groundbreaking class action settlement, more than 170,000 American Airlines customers will receive either a full refund plus interest, or a 75% refund, for overcharged checked bag fees.  Although the claims process is not yet complete, Plaintiff currently projects that approximately $7,450,207 in refunds will be distributed to Class Members under this Settlement.  (*See* Declaration of Linda M. Dardarian ("Dardarian Decl."), filed herewith, ¶¶ 19-20; Declaration of Benjamin Edelman ("Edelman Decl."), filed herewith, ¶ 29.)

This extraordinary result for the Class would not have been possible without the diligent, innovative efforts of Class Counsel, including: (1) conceptualizing and investigating a first-of-its-kind consumer class action based on systematic checked bag overcharges; (2) applying extensive expertise regarding information technology in the airline industry in order to identify

727998.12

specific groups of passengers who were subject to overcharges; (3) preparing for the procedural complexities of a fifty-state class litigation for breach of contract; (4) negotiating a settlement that offers excellent benefits to the Class; and (5) closely monitoring the notice and claims process in order to provide Class Members the best possible opportunity to file claims and ensure that all valid claims are accurately refunded.  Due in part to Class Counsel's efforts to negotiate and implement a robust notice program and straightforward claim filing process, the claim rate currently stands at 38% and will likely still increase.  This is a very high claim rate in a consumer class settlement.  *See* Dardarian Decl. ¶ 19.

To compensate Class Counsel for these efforts, Plaintiff seeks an attorneys' fee award of $2,701,666.29.  This figure represents 22% of the projected total settlement fund, which consists of: the amount of money to be distributed to Class Members who *actually filed claims*, plus the amount paid to the settlement administrator for the notice and claims process, attorneys' fees, and costs and expenses.  A fee award equal to 22% of the total fund is well within the range of fee percentages approved in comparable class settlements and is reasonable in light of the excellent results, Class Counsel's skill, the complex issues of law and fact at issue, the risks assumed in taking on this litigation, and the positive reactions of Class Members.  Class Counsel's lodestar further confirms that the requested fee is reasonable.  In addition, Class Counsel's request for reimbursement of $48,333.71 in costs and expenses should be granted.

## II.      CASE HISTORY

### A.      Litigation and Settlement

This is a nationwide breach of contract class action alleging that Defendant American Airlines ("AA") failed to honor contractual promises to check passengers' bags for no charge.

727998.12

Plaintiff and his Counsel began investigating this case in September 2016.  (*See* Decl. of Benjamin Edelman in Supp. of Pl.'s Mot. for Prelim. Approval ¶¶ 10-15, ECF No. 59.)  Plaintiff filed his Complaint on July 13, 2017.  (ECF No. 1.)  At Plaintiff's invitation, the Parties began negotiating shortly after Plaintiff served AA with the Complaint on October 2, 2017.  (Dardarian Decl. ¶ 6.)  The Parties also swiftly began exchanging formal discovery: in all, AA has produced documents on twelve different occasions, ultimately producing over 4,400 pages of documents to Plaintiff.  In addition, Plaintiff deposed AA's 30(b)(6) witness on January 25, 2018.  (*Id*. ¶¶ 7-8.)

The Parties agreed to mediate before Magistrate Judge Page M. Kelley in February, 2018. As the date of the mediation approached, however, AA had not yet produced information sufficient to determine how many passengers had been charged to check bags that should have been free, in what ways, and when.  When Class Counsel informed AA's Counsel that this information would be necessary for a productive mediation, AA's Counsel represented that AA did not know how to retrieve this information.  (*Id.* ¶ 9.)  In response, Class Counsel organized a chart of the most significant ways in which AA passengers had been overcharged for checked bag fees, based on their investigations and knowledge of AA's bag check entitlements and data systems.  (*Id.*)  For example, some passengers were entitled to some number of free checked bags based on their frequent flyer status, but the promise was not honored.  Other passengers received an e-ticket confirmation email that stated they would be permitted to check one bag for free, but they were then charged to check the bag.  (*Id.*)

Based on the categories of alleged contract breaches that Class Counsel provided, AA hired a consultant to help it identify and quantify passengers who had been overcharged for checked bag fees in these ways, with input from Class Counsel.  (*Id.* ¶ 10.)  Prior to the mediation, AA produced (for settlement purposes only) data tables showing estimated monthly

totals of the categories of checked bag overcharges that Class Counsel had identified —

information that proved crucial to reaching a settlement.  (*Id.*; *see also* Green Decl. ¶ 9, ECF No.

60.)  AA's counsel has commented that AA would have had trouble organizing its data

concerning checked bag fee overcharges into a useful form without Class Counsel's assistance

and expertise.  (Dardarian Decl. ¶ 10.)

On February 16, 2018, the Parties participated in a full-day mediation with Magistrate

Judge Page M. Kelley and made progress toward settlement.  (*See* ECF Nos. 47, 49.)  Thereafter,

the Parties engaged in many informal settlement discussions as well as several telephonic status

conferences before Judge Kelley.  The entire mediation process and accompanying negotiations

were time- and resource-intensive for Class Counsel, who were also in the process of preparing

the motion for class certification, as both negotiations and litigation were taking place

concurrently.  (*Id.* ¶ 12.)  The Parties ultimately succeeded in reaching an agreement and averting

the need for further litigation, with the settlement agreement finalized and executed on June 7,

2018.  (*Id.*)

Over the course of the negotiations, the Parties acknowledged that determining class

membership and potential refund payments owed to Class Members would require collecting,

analyzing, and verifying complex passenger bag check data.  AA represented that the

information necessary to process claims exists in multiple databases that are difficult to search.

For this reason, the Parties' Settlement Agreement provided that an over-inclusive list of AA's

passengers would be sent the class notice and have the opportunity to file a claim, and that

Defendant would then verify those claims by reference to its business records.  (*See* Pl.'s Mot.

for Prelim. Approval 10-11, ECF No. 56 at 3-4.)  The Parties agreed to several rounds of notice,

both by mail and email, to help ensure that as many Class Members as possible would actually

4

receive notice.  (*Id.* at 14.)  On June 22, 2018, the Court granted preliminary approval of the Settlement and directed notice to the Class in accordance with the Settlement Agreement.  (ECF No. 65.)

**B.**     **Settlement Administration**

The notice and claims processes proved to be more complex and resource-intensive than the Parties anticipated.  Throughout, problems arose due chiefly to errors in AA's passenger record keeping and claim determinations.  For one, many passenger records lacked an accurate mailing address: either the mailing address field was blank, or it contained a mailing address that would obviously not reach the passenger, such as the address of a travel agent or, in many cases, that of AA's own corporate headquarters.  (Dardarian Decl. ¶¶ 15-16; *see also* Dardarian Decl. in Supp. of Pl.'s Mot. for Continuance of Fairness Hrg. and Related Deadlines ¶¶ 4-7, ECF No. 67-1.)  Class Counsel persuaded AA and the settlement administrator to search for correct addresses for these Class Members using email addresses, dates of birth, and telephone numbers.  Then, Class Counsel twice successfully moved the Court for extensions to the claim deadline for Class Members who received late notice because their mailing addresses were missing or incorrect in AA's records.  (*See* ECF Nos. 74 (contested), 76 (uncontested).)

In addition, the Settlement tasks AA with initially determining whether each Class Member who submits a claim is actually entitled to a refund.  (Settlement § IX.F, K, ECF No. 56-2 at 24, 26.)  On August 15, 2018, when AA circulated to Class Counsel its first round of claim determinations, Class Counsel identified numerous errors and areas of disagreement in the determinations.  (Dardarian Decl. ¶ 17.)  Through a series of meet and confer phone calls, Class Counsel have advocated on Class Members' behalf to correct errors and reverse claim denials.

5

Class Counsel's continued advocacy on the Class's behalf throughout the notice and claims process has required significant time and effort.  (*Id.*)

### III.    LEGAL STANDARD

The Settlement Agreement provides that Class Counsel may seek attorneys' fees "under the Common Fund doctrine or lodestar/multiplier approach under either federal or Texas state law."  (Settlement § VI.B, ECF No. 56-2 at 17.)  In the First Circuit, two general methods exist for assessing attorneys' fee awards in class action settlements: the percentage-of-the-fund method and the lodestar method.  *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015).  Under the percentage method, the Court awards attorneys' fees as a certain percentage of the settlement fund.  Under the lodestar method, the Court multiplies the number of hours class counsel worked on a case by a reasonable hourly billing rate for such services, then applies an enhancement or multiplier if appropriate in the circumstances of the case.  *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760, 764 (Tex. 2012) (Texas law allows multipliers up to 400%).  District courts have wide discretion in determining appropriate attorneys' fees.  *Burke v. McDonald*, 572 F.3d 51, 63 (1st Cir. 2009).

### IV.    ARGUMENT

**A.    Plaintiff's Fee Request Is Reasonable Under the Percentage Method.**

#### 1.    The Percentage Method Is the Most Appropriate Basis for Calculating Attorneys' Fees Under the Circumstances.

The percentage method is the preferred method for awarding attorneys' fees in common fund cases in the First Circuit.  "In its paradigmatic formulation, the common fund doctrine permits . . . a person preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including counsel fees, from the fund itself, or alternatively, from the other beneficiaries."  *In re Nineteen Appeals Arising Out of San Juan Dupont Plaza Hotel*

*Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992) ("*In re Nineteen Appeals*") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)); *see also In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 16 (1st Cir. 2012) (common fund method applies "where attorneys seek compensation from a discernable pot of money won by the plaintiffs"). "In complex litigation—and common fund cases, by and large, tend to be complex—the [percentage] approach is often less burdensome to administer than the lodestar method." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) ("*In re Thirteen Appeals*"). Moreover, the percentage method "more appropriately aligns the interest of the class with the interests of the class counsel—the larger the value of the settlement, the larger the value of the fee award." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997). This Court as well has recognized that the percentage method is the most desirable approach to awarding attorneys' fees where available. *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77-78 (D. Mass. 2005) (Young, J.) (noting that the percentage method constitutes the "prevailing praxis" and that "[c]ontrary to popular belief it is the lodestar method, not the [percentage] method, that breaks from precedent") (internal citations omitted).

Here, because Plaintiff and his Counsel settled for a large sum of money on behalf of hundreds of thousands of AA passengers, who will share in the benefits, it is appropriate to award attorneys' fees as a percentage of the common fund.

### 2. The Requested Fee Equals 22% of the Settlement Fund, Which Is Accurately Valued at $12,093,029.

Where, as here, a class action settlement fund is distributed to class members on a claims-made basis and the remaining funds revert to the defendant, the settlement fund is valued based on claims actually made, rather than the entire pot of money that the settlement theoretically

makes available to the Class.  *See In re TJX Cos. Retail Sec. Breach Litig.* ("*In re TJX*"), 584 F.

Supp. 2d 395, 410 (D. Mass 2008) ("*In re TJX*").

      The total settlement fund also includes sums paid toward notice and claims

administration, which facilitate class members' access to settlement funds and therefore benefit

the class.  *See, e.g.*, *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.

Supp. 2d 1040, 1077-78 (S.D. Tex. 2012) ("*In re Heartland*") ("Class counsel includes the

approximate cost of administering the claims process . . . in valuing the settlement.  District

courts routinely include such administrative costs in calculating attorneys' fees awards.") (citing

*Amunrud v. Sprint Commc'ns Co., L.P.,* No. 1:10-CV-00057-BLG-CSO, 2012 WL 443751, at *2

(D. Mont. Feb. 10, 2012); *Gomez v. H & R Gunlund Ranches, Inc.*, No. 1:10-CV-01163 LJO

MJS, 2011 WL 5884224, at *5 (E. D. Cal. Nov. 23, 2011); *Serrano v. Sterling Testing Sys., Inc.*,

711 F. Supp. 2d 402, 419 (E.D. Pa. 2010).)  In addition, courts calculating attorneys' fees based

on the percentage method customarily include attorneys' fees and costs in the denominator of the

fraction, such that the fees are expressed as a percentage of the entire fund.  *See, e.g.*, *Johnston v.*

*Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (attorneys' fees and costs are "best

viewed as an aspect of the class' recovery"); *In re Heartland*, 851 F. Supp. 2d at 1078 ("[F]ees

and costs are properly included in the settlement valuation.").

      Here, the claims process is still in progress,[1] but Class Counsel project the final value of

claims made at $7,450,207.  *See* Dardarian Decl. ¶ 20; Edelman Decl. ¶ 29.  To date, AA has

paid the settlement administrator $1,347,822.87 for notice and claims administration; the total

claims administration costs are expected to be $1,892,222.  Dardarian Decl. ¶ 21.  Finally,

---

[1] As of January 17, 2019, AA's counsel represented that it had already verified and approved 171,237 claims, with a total value of $6,535,270.  Dardarian Decl. ¶ 20.  Class Counsel project these figures to grow by approximately 14%.  Edelman Decl. ¶ 29.

Plaintiff seeks $2,701,666.29 in attorneys' fees and $48,333.71 in costs in expenses, bringing the total settlement fund to **$12,093,029**. Accordingly, Plaintiff's request for $2,701,666.29 in attorneys' fees represents **22%** of the total common fund. *Id.* ¶ 22.

### 3.   An Award of Attorneys' Fees Equal to 22% of the Settlement Fund Is Reasonable.

Plaintiff's request for attorneys' fees equal to 22% of the settlement fund is modest relative to percentages that have been awarded in this District. *See, e.g.*, *In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 (Young, J.) (awarding one-third of settlement fund as attorneys' fees); *Courtney v. Avid Tech., Inc.*, No. 1:13-cv-10686-WGY, 2015 WL 2359270, at *1 (D. Mass. May 12, 2015) (Young, J.) (30%); *Roberts v. TJX Cos., Inc.*, No. 1:13-cv-13142-ADB, 2016 WL 8677312, at *12-13 (D. Mass. Sept. 30, 2016) (one-third); *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 1:17-cv-10219-JGD, 2017 WL 5900058, at *1 (D. Mass. Nov. 28, 2017) (one-third); *Gordan v. Mass. Mutual Life Ins. Co.*, No. 3:13-cv-30184-MAP, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) (one-third); *In re Neurontin Marketing & Sales Practices Litig.*, 58 F. Supp. 3d 167, 173 (D. Mass. 2014) (28%); *Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 350-51 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (25%); *Latorraca v. Centennial Techs., Inc.*, 834 F. Supp. 2d 25, 27 (D. Mass. 2011) (awarding 25% and observing that "[c]ourts in [the First C]ircuit generally award attorneys' fees in the range of 20-30%, with 25% as 'the benchmark'") (quoting *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 187 (D. Mass 1998)).

In addition, the following factors, which courts in the First Circuit consider in evaluating fee awards under the percentage method, confirm that Plaintiff's fee request is reasonable: the results obtained; Class Counsel's skill, experience, and efficiency; the complexity of the litigation and settlement process; the reactions of Class Members to the settlement; and the risks

undertaken in bringing the case.  *See In re TJX*, 584 F. Supp. 2d at 401; *Hill v. State St. Corp.*, No. 1:09-cv-12146-GAO, 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015).

a.      **The Results Obtained on Behalf of the Class**

The excellent benefits for Settlement Class members strongly support Plaintiff's attorneys' fee request.  Most Class Members who have submitted a timely, valid claim form will receive a full refund of their incorrectly charged checked bag fees, plus interest at the rate of 5% under Texas law.  (*See* Settlement Agreement § IV.B.1, ECF No. 56-2 at 15.)  Those Class Members whose claims are based on promises contained in their e-ticket confirmation email and who have submitted a timely, valid claim form will receive a refund equal to 75% of their incorrectly charged checked bag fees.  These results are extraordinary: Class members would not obtain a significantly greater award at trial, as additional measures of damages such as punitive damages are not recoverable under breach of contract.  *See Weber v. Domel*, 48 S.W.3d 435, 437 (Tex. App. Ct. 2001).  (Dardarian Decl. ¶ 23.)

Moreover, the size of the common fund — $12,093,029 — constitutes a substantial settlement.  Courts in this Circuit have recognized that "the net dollars and cents results achieved by counsel for their clients is often he most influential factor in assessing the reasonableness of any attorneys' fee award."  *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 458 (D.P.R. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  The substantial recovery and excellent result for individual Class Members are particularly meaningful here in light of the unprecedented nature of this case: Class Counsel are unaware of a fifty-state class action for breach of contract addressing checked bag fee overcharges that was successfully litigated or settled.  Dardarian Decl. ¶ 24.

727998.12

b.      <u>Class Counsel's Skill, Experience, and Efficiency</u>

In considering the quality of representation, courts in the First Circuit consider counsel's competence, reputation, commitment to their clients' interests, and experience in litigating similar matters.  *See, e.g.*, *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 459 (noting counsel's integrity, ingenuity, experience, reputation and commitment to the interests of their clients); *Roberts*, 2016 WL 8677312, at *11 (highlighting counsel's competence and relevant litigation experience).

Here, Class Counsel combine — at expert levels — the skill sets needed to effectively litigate this complex action.  Goldstein, Borgen, Dardarian & Ho ("GBDH") is a leading class action firm with decades of experience in litigating and negotiating the resolution of large-scale complex class action cases, including consumer cases.  (Dardarian Decl. ¶¶ 35-38.)  *See, e.g.*, *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 378–79 & n.2 (5th Cir. 2011) (discussing the challenges inherent in large class action litigation and the qualifications of GBDH to serve as expert counsel in such a case); *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 515, 517 (S.D.N.Y. 2010) (noting the particular expertise required to litigate complex class action cases).  Mr. Edelman is a leading expert in online consumer agreements and commercial practices, with a particular focus on the airline industry, and has previously served as class counsel in several cases challenging abuses in the online economy.  (Edelman Decl. ¶¶ 3-8.)  Additionally, Mr. Edelman has significant technical expertise related to database and internet software which has been essential to the investigation and discovery that enabled the parties in this case to reach the present, comprehensive settlement, as well as to Class Counsel's continued oversight of the notice and claims process.  (*Id.*)

Moreover, Class Counsel's skill and efficiency are evident from their speedy and favorable resolution of the case as well as their insight into the technological challenge of

identifying and quantifying passengers who were charged to check bags that should have been transported for free.  Finally, Class Counsel have amply demonstrated their commitment to the interests of Plaintiff and the Class by vigilantly monitoring the notice and claims processes and advocating for Class Members throughout.

**c.**      **The Complexity of the Litigation and Settlement Process**

In evaluating an attorneys' fee award under the percentage method, courts also consider "the novelty and difficulty of the questions involved and the skill requisite to properly perform the legal services," as well as the "time and labor required" of counsel.  *Bennett v. Roark Capital Grp., Inc.*, No. 2:09-cv-00421-GZS, 2011 WL 1703447, at *1 (D. Me. May 4, 2011) (citing *Sylvester v. CIGNA Corp.*, 401 F. Supp. 2d 147, 151 (D. Me. 2005)); *see also In re Lupron Mktg. & Sales Practices Litig.*, MDL No. 1430, Master File No. 01-cv-10861-RGS, 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005) (difficult and novel legal issues and "thorny issues of fact" weighed in favor of attorneys' fee award).

This case presents novel, complex issues of law and fact.  Class Counsel believe this to be the first case ever to challenge a systemic failure to honor an airline's policies and contractual promises regarding baggage fees.  The innovative, nationwide case required Counsel to navigate both the highly technical Airline Deregulation Act and the common law of contracts of the fifty states — all in the context of still-developing case law regarding online or "clickwrap" contracts, as well as the multidimensional complexity of AA's system for charging checked bag fees. (Dardarian Decl. ¶ 25.)  Additionally, this case was rife with technical challenges linked to the data systems maintained by American Airlines, requiring not only extensive investigation and nuanced data discovery but also continued sophisticated oversight by Class Counsel to ensure that overcharges were accurately detected, that all Class Members were provided with notice, and finally (in work that is still ongoing) that claims are not being incorrectly denied.  (*Id.*)

12

Moreover, even though the Parties settled the case relatively quickly, a great deal of effort was required to investigate the claims at issue in this case and compile the data necessary to reach a settlement that would effectuate Class Members' rights.  AA itself commented that analyzing the data necessary to settle would have been very difficult if not for Class Counsel's expertise regarding AA's own bag check entitlements and information systems.  (*Id.* ¶ 26.) Further, Plaintiff filed the motion for preliminary approval of the settlement on the deadline for class certification, after receiving two extensions of that deadline, and Plaintiff would have had only five more months to prepare for trial had negotiations failed.  (*Id.*; ECF Nos. 33, 54, 55.) As a result, Class Counsel spent significant time and resources preparing for class certification and trial to account for this possibility.  This preparation involved grappling with the procedural complexities of a fifty-state breach-of-contract class litigation and analyzing the many defenses that Class Counsel anticipated AA would raise both at class certification and on the merits. (Dardarian Decl. ¶ 26.)  Finally, complications and disagreements that have arisen during the notice and claims processes have demanded significant attention from Class Counsel.  (*Id.* ¶¶ 15-17, 26.)

### d.      Reactions of Class Members

In contrast with the 242,241 Clas Members who have filed claims to date, only 8 individuals have filed requests for exclusion, or just 0.001% of the Class.  (Dardarian Decl. ¶ 27.)  No objections have yet been filed.  (*Id.*)  Moreover, Class Members who have contacted Class Counsel have expressed excitement about the possibility of receiving a full refund for checked bag fees.  (*Id.*)  The positive reactions of Class Members to this Settlement further support Plaintiff's attorneys' fee request.

e.       **Risks Undertaken by Class Counsel**

Finally, the risks that Class Counsel took on in bringing this case justify an attorneys' fee award equal to 22% of the fund.  Where "substantial risks of non-recovery" existed and class counsel brought a class action "on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class," courts favorably consider "this contingency risk in awarding attorneys' fees."  *Hill*, 2015 WL 127728, at *18.

Because this case was the first of its kind, Plaintiff faced risks both at class certification and on the merits that could have resulted in no recovery.  At class certification, Defendant likely would have argued that: (1) when Plaintiff purchased his ticket, he waived his class action rights by way of a page of the website that purported to extinguish such rights; (2) that this Court does not have personal jurisdiction over Defendant with respect to the claims of class members who live outside Massachusetts; and (3) that that this litigation would not be manageable as a class action due to the data analysis involved in determining class membership.  (Dardarian Decl. ¶ 28.)  On the merits, Defendant likely would have argued that: (1) the claims at issue in this case are limited in scope by the Airline Deregulation Act; and (2) the e-ticket confirmation email is not part of the contract between Defendant and passengers.  (*Id.*)  In sum, Class Counsel brought this case on a contingent basis despite significant risks, and the fee should reflect those risks.

**B.       Plaintiff's Fee Request Is Reasonable Under a Lodestar Cross-Check.**

Although not required to, the Court may use a lodestar analysis as a cross-check on the reasonableness of Plaintiff's requested fee award under the percent-of-fund method discussed above.  *See In re Thirteen Appeals*, 56 F.3d at 308; *In re Relafen Antitrust Litig.*, 231 F.R.D. at 79.  As further detailed below, Class Counsel's adjusted lodestar totals $1,944,603, yielding an effective multiplier of 1.39.  Even using "median" Boston rates that are below the market rate for

their services,  Class Counsel's lodestar would total $1,454,627.50, yielding an effective

multiplier of 1.86.  Evaluated under the standards that govern lodestar fee awards under either

federal or Texas law, Plaintiff's requested fee is fair and reasonable.

The lodestar analysis begins by "multiplying the number of hours productively spent by a

reasonable hourly rate to calculate a base figure." *De Jesus Nazario v. Morris Rodriguez*, 554

F.3d 196, 207 (1st Cir. 2009); *see also El Apple I*, 370 S.W.3d at 760 (same).  The base figure

may then be adjusted "based on several different factors, including the results obtained." *De

Jesus Nazario*, 554 F.3d at 207; *see also El Apple I*, 370 S.W.3d at 760 (same).  When the

lodestar is used to cross-check a percent of fund award, "the focus is not on the 'necessity and

reasonableness of every hour' of the lodestar, but on the broader question of whether the fee

award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco

Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007) ("*In re Tyco*") (quoting *In

re Thirteen Appeals*, 56 F.3d at 307).

1.   **Class Counsel's Hours Are Reasonable.**

"Where a plaintiff has obtained excellent results, his attorney should recover a fully

compensatory fee.  Normally this will encompass all hours reasonably expended on the

litigation." *Hensley*, 461 U.S. at 435.  Class Counsel project that they will have devoted 3,809.6

hours (after billing judgment) through the date of the final approval hearing to prosecuting this

complex, nation-wide class action.  (Dardarian Decl. ¶ 32.)  Their effective and extensive

investigation, early discovery, and advocacy laid the groundwork for the initiation of settlement

discussions.  Throughout the lengthy negotiation process, Class Counsel zealously and

effectively advocated on behalf of the Settlement Class.  Additionally, while the lengthy

mediation process was ongoing, Class Counsel devoted significant time to preparing to file the

727998.12

motion for class certification.  Following preliminary approval, Class Counsel have closely monitored the notice and claims process and will continue to do so.  (*Id.* ¶ 34.)

The outstanding results obtained for Class Members—full reimbursement for many of the allegedly unlawful baggage fees plus interest, seventy-five percent reimbursement for the remaining allegedly improper baggage fees, favorable notice and claims procedures, and ultimately a robust claims rate resulting in at least $6,538,161 returned to Class Members—could not have been achieved without Class Counsel's many hours of diligent  work.

Class Counsel's hours also reflect common indicia of reasonableness.  Class Counsel efficiently allocated tasks in order to prevent duplication and maximize efficiency.  (*Id.* ¶ 33.) Additionally, Class Counsel exercised billing judgment to eliminate redundant or excessive time. (*Id.* ¶ 30; Edelman Decl. ¶ 20.)   *El Apple I*, 370 S.W.3d at 762 (citing *Hensley*, 461 U.S. at 434).

## 2.  <u>Class Counsel's Hourly Rates Are Reasonable.</u>

The next step in the lodestar analysis is for the Court to determine "a reasonably hourly rate or rates—a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence."  *Matalon v. Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015) (internal citation and quotation marks omitted); *see also City of San Antonio v. Hotels.com, L.P.*, No. 5-06-cv-381-OLG, 2017 WL 1382553, at *9 (W.D. Tex. Apr. 17, 2017) (same).  Class Counsel have submitted extensive documentation in support of their requested rates, including a summary of their sterling qualifications and experience in class actions and consumer law, a list of cases approving higher rates for Class Counsel in similarly complex cases, and data regarding actual hourly rates paid to comparable attorneys in the local market.  (Dardarian Decl. ¶¶ 35-51 & Ex. 5; Edelman Decl. ¶¶ 31-33.)

727998.12

Because hourly rates in Boston are lower on average than those in the San Francisco Bay Area, the home market for Goldstein, Borgen, Dardarian & Ho ("GBDH"), GBDH has reduced its requested rates based on data reflecting the actual hourly rates paid to attorneys in the Boston area, even though such a reduction is not required.  (Dardarian Decl. ¶¶ 43-51.)  In setting these rates, GBDH relied on the *2017 Real Rate Report Snapshot* published by Wolters Kluwer, which is based on actual hourly fees paid to 112,000 attorneys and paralegals,  including over 500 litigation attorneys in the Boston area.  (Dardarian Decl. Ex. 5 at 23.)  These rates are reliable because they reflect a large sample of actual hourly rates paid to attorneys, as compared with firms' published billing rates, which may not reflect discounts or negotiated rates.  *See Tyler v. Michaels Stores, Inc.*, 150 F. Supp. 3d 53, 69-70 (D. Mass. 2015); *see also  Retta v. Millennium Prods., Inc.*, No. 2:15-cv-1801-PSG-AJWx, 2017 WL 5479637, at *12 (C.D. Cal. Aug. 22, 2017) ("Courts have found that the Real Rate Report is 'a much better reflection of true market rates than self-reported rates in all practice areas.'") (collecting cases) (internal citation omitted).  Class Counsel's lodestar, calculated with GBDH rates based on the litigation rates for comparably experienced Boston counsel, totals $1,944,603.  (Dardarian Decl. ¶ 51.)  Based on this lodestar, the fee requested by Class Counsel corresponds to a multiplier of 1.39.  (*Id.*)  Alternatively, using "median" Boston rates that are below the market rate for their services, Class Counsel's lodestar would total $1,454,627.50, yielding a multiplier of 1.86.  (*Id.* at ¶ 52.)

Class Counsel's requested rates are within the range of rates recently awarded in state and federal court in Massachusetts, including rates awarded in complex and class action cases.  *See, e.g.*, *NPS LLC v. Ambac Assurance Corp.*, 190 F. Supp. 3d 212, 220-24 (D. Mass. 2016) (awarding rates of $657 to $742 for partners and $329 to $491 for associates in complex commercial litigation); *Bezdek*, 79 F. Supp. 3d at 350 (in class action, approving a percent of

17

fund award where lodestar cross-check reflected blended hourly rate of approximately $550);

*Davis v. Footbridge Eng'g Servs., LLC*, No. 1:09-cv-11133-NG, 2011 WL 3678928, at *3-4 (D.

Mass. Aug. 22, 2011) (awarding rates of $565 to $650 for partners, $425 for a senior associate,

$350 to $355 for associates, and $140 to $170 for paralegals) (wage and hour class action);

*Specialized Tech. Resources, Inc. v. JPS Elastomerics Corp.*, No. HSCV200700200, 2011 WL

1366584, at *10 (Mass. Super. Ct. Feb. 10, 2011), *aff'd*, 80 Mass. App. Ct. 841, 957 N.E.2d 1116

(2011) (in complex commercial litigation, awarding attorney rates of $210 to $885).

### 3.    A Multiplier Between 1 and 2 Is Reasonable.

After the base lodestar amount is calculated, both federal and Texas law direct courts to

apply a multiplier to the total fee award to reflect factors such as the results obtained, the novelty

and difficulty of the questions presented by the case, the skill required of counsel, and whether

the fee is fixed or contingent.  *See Joyce v. Town of Dennis*, 720 F.3d 12, 27 (1st Cir. 2013);

*Carpaneda v. Domino's Pizza, Inc.*, 89 F. Supp. 3d 219, 230 (D. Mass. 2015); *El Apple I*, 370

S.W.3d at 760-61 (quoting and citing Tex. R. Civ. P. 42(i)(1), which governs attorneys' fees in

class actions).  These factors strongly support Class Counsel's requested multiplier.

The "results obtained" factor is "'a preeminent consideration in the fee-adjustment

process,'" whether measured by "'plaintiff's success claim by claim,'" or by "'the relief actually

achieved.'"  *Joyce*, 720 F.3d at 27 (quoting *Coutin v. Young & Republican P.R., Inc.*, 124 F.3d

331, 338 (1st Cir. 1997)); *see also City of San Antonio*, 2017 WL 1382553, at *14.  The

settlement affords full value recovery to a large proportion of the Settlement Class, and seventy-

five percent reimbursement to the remainder of the Class, all on a claims-made basis. As a result

of this settlement, approximately 600,000 claims have been resolved on favorable terms in less

than two years. This outcome can only be seen as an extraordinarily successful resolution of the single breach of contract claim set out in the complaint.  (Dardarian Decl. ¶ 66.)

Nor is the magnitude of the Class's recovery "illusory."  *Cf. In re TJX*, 584 F. Supp. 2d at 409.  Although this is a claims-made settlement, a robust claims rate of 38.3 percent has already resulted in $6,538,161 successfully claimed by Class Members.  It is proper for this Court to award a significant multiplier that reflects the substantial monetary relief paid out as a result of Class Counsel's efforts.  *See generally In re TJX*, 584 F. Supp. 2d at 402-10.

The novelty and difficulty of the questions presented by the case, and the skill required of Class Counsel to litigate it effectively, also weigh heavily in favor of a substantial multiplier.  *See El Apple I*, 370 S.W.3d at 760-61; *Joyce*, 720 F.3d at 27; *Carpaneda*, 89 F. Supp. 3d at 230.  As discussed in Sections IV.A.3(ii) and (iii), *supra*, this case presents novel questions of law and fact, and Class Counsel were uniquely qualified to meet these challenges.

Finally, as outlined above, Class Counsel accepted a substantial risk in taking on this innovative and challenging case on a wholly contingent basis, without any guarantee that they would receive compensation for their work.  This factor, too, weighs in favor of the requested multiplier.  *See Carpaneda*, 89 F. Supp. 3d at 230; *El Apple I*, 370 S.W.3d at 761; *Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 227-28 (5th Cir. 2011) (collecting Texas cases).

Class Counsel's requested multiplier is well within the range considered reasonable in comparable cases under both federal and Texas law.  *See In re Tyco*, 535 F. Supp. 2d at 271 (approving multiplier of 2.697 based on risk assumed by counsel); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 82 (awarding a multiplier of 2.02 and collecting authorities for multipliers as high as 4.07 and 8.9); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 1:05-cv-11148-PBS, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding 8.3 multiplier

727998.12

based on results obtained, complexity, and counsel's skill, as well as the "innovative" notice program and efforts to find class members); *El Apple I*, 370 S.W.3d at 761 (holding that multipliers as high as 400% are permissible under Texas law) (citing Tex. R. Civ. P. 42(i)(1)); *City of San Antonio*, 2017 WL 1382553, at *1 (awarding multiplier of 2.5 under Texas law based on exceptional results and contingency, and collecting authorities for multipliers of 3, 1-4, and 2.17); *Anani v. Abuzaid*, No. 05-16-01364-CV, 2018 WL 2926660, at *10 (Tex. App. Ct. June 7, 2018) (approving a multiplier of 2.0 as "well within the acceptable range").

**C.      The Court Should Award Class Counsel $48,333.71 in Costs and Expenses.**

The Settlement Agreement authorizes Class Counsel to seek "reimbursement of their expenses and costs" along with attorneys' fees.  (Settlement § VI.A & B, ECF No. 56-2 at 17); Fed. R. Civ. P. 23(h).  Reimbursement of Class Counsel's modest expenses is particularly appropriate in light of Counsel's success in obtaining substantial relief for the Class through the settlement fund.  *See In re Fidelity/Micron Secs. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999).  Class Counsel incurred $48,333.71 in out-of-pocket expenses for legal research, court reporter and transcript fees, filing fees, printing, necessary travel, and other litigation expenses.  (Dardarian Decl. ¶ 71.)  These are standard expenses typical of class actions and were necessarily incurred. *See, e.g.*, *In re MetLIfe Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010).

## V.      CONCLUSION

Plaintiff has demonstrated that Class Counsel are entitled to an award of attorneys' fees of $2,701,666.29 and reimbursement of $48,333.71 in costs and expenses.  Because the claims process is not yet complete, certain figures in this brief — such as the claims rate, the claim total, and Class Counsel's lodestar — are preliminary.  Plaintiff will supplement these numbers at such time as final figures are known.

Dated:  January 18, 2019                     Respectfully submitted,

                                             s/ Linda M. Dardarian
                                             Linda M. Dardarian (*pro hac vice*)
                                             ldardarian@gbdhlegal.com
                                             Byron Goldstein (*pro hac vice*)
                                             brgoldstein@gbdhlegal.com
                                             Raymond Wendell (*pro hac vice*)
                                             rwendell@gbdhlegal.com
                                             GOLDSTEIN, BORGEN, DARDARIAN & HO
                                             300 Lakeside Drive, Suite 1000
                                             Oakland, CA  94612
                                             Tel:    (510) 763-9800
                                             Fax:    (510) 835-1417

                                             Benjamin Edelman (BBO #663528)
                                             LAW OFFICES OF BENJAMIN EDELMAN
                                             169 Walnut Street
                                             Brookline, MA 02445
                                             Tel:    (617) 297-7360

                                             Attorneys for Plaintiff and the Settlement Class

727998.12

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated on the NEF as non-registered participants on January 18, 2019

/s/ Linda M. Dardarian
Linda M. Dardarian

727998.12