IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MAX BAZERMAN, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>American AIRLINES, INC., a Delaware Corporation,<br><br>    Defendant. | Case No.: 1:17-CV-11297-WGY |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**

## I.    INTRODUCTION

Plaintiff Max Bazerman ("Plaintiff"), individually and on behalf of a proposed Settlement Class of passengers on American Airlines, Inc. ("AA"), respectfully requests that the Court grant final approval of the proposed class action settlement (the "Settlement") and permanent certification of the Settlement Class, and enter final judgment in this case. AA does not oppose Plaintiff's motion. *See* Declaration of Linda M. Dardarian, filed herewith ("Dardarian Decl."), ¶ 1.

Plaintiff alleges that AA has failed to honor certain contractual provisions that allow passengers to check bags for no charge. The Court granted preliminary approval of the Settlement on June 22, 2018. (ECF No. 65.) Under the Settlement, Class Members who submit valid, timely claim forms and whose claims are verified against AA's records are entitled to either a full cash refund plus five percent interest for their checked bag fees, or a 75% cash refund, depending on the source of their claims.

1

731964.10

Notice was disseminated to the Class in accordance with the Court's Preliminary Approval Order. *See* Declaration of Steven J. Giannotti Regarding Administration of Class Action Settlement ("Giannotti Decl."). The Settlement Administrator sent at least one form of notice to 728,827 individuals, of whom 247,763 filed claims, for an overall claim rate of 34%. Giannotti Decl. ¶ 4. 188,112 claims have been or are slated to be verified, for a total value of $6,671,449. Some additional claims are still subject to disputes between the Parties. *See* Dardarian Decl. ¶¶ 4-5. Thus, at the close of the notice and claims processes, the Settlement has provided an excellent outcome for the Class. No Class Member has filed an objection to the Settlement. *Id.* ¶ 19.

The Settlement is the result of serious, non-collusive, arm's-length negotiations and is fair, reasonable, and adequate. All prerequisites for final approval of the Settlement are met, and the Settlement Class is appropriate for permanent certification under Fed. R. Civ. P. 23(a) and (b)(3) ("Rule 23"). As a result, final approval should be granted.

## II.    BACKGROUND

The factual and procedural background of this case prior to settlement are set out in Parts II.A and B of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 56).

On June 22, 2018, the Court preliminarily approved the Settlement, certified the Settlement Class, directed notice to the Settlement Class, and set a date for the Fairness Hearing. (ECF No. 65.) The Fairness Hearing was later rescheduled for April 4, 2019. (ECF No. 76.)

A. **Terms of the Settlement**

The proposed Settlement was filed in its entirety as an exhibit to Plaintiff's motion for preliminary approval. (Settlement Agreement, ECF No. 56-2.) The following summarizes its most important terms.

1. **The Proposed Settlement Class**

The proposed "Settlement Class" consists of AA passengers who, during the class period, were charged checked bag fees in spite of provisions in either the Baggage Policy or their Confirmation Emails stating that they could check those bags for no charge. Specifically, the Settlement Class is defined as follows:

> All residents of the United States (including the fifty states, the District of Columbia, the U.S. Virgin Islands, and Puerto Rico) who:
>
> a. traveled on American Airlines ("American");
>
> b. at any time between July 13, 2013 and the Settlement Date (the "Class Period"), and
>
> c. meets the criteria of either or both subsections (i) and (ii) below:
>
> > i. were charged a checked bag fee inconsistently with statements in American's Baggage Policy that passengers may check one or more bags for no additional charge, excluding oversized and overweight checked bags, specialty items, and sports equipment, for any of the following reasons:
> >
> > > a. At the time of check-in, the passenger held a First or Business Class ticket for a domestic flight;
> > >
> > > b. At the time of check-in, the passenger held a Business Class ticket for an international flight;
> > >
> > > c. At the time of check-in, the passenger held AAdvantage elite status with AA or an equivalent frequent flyer elite status with a partner airline, or traveled on the same itinerary as a passenger who held such status;
> > >
> > > d. At the time of check-in, the passenger was an active U.S. Military member or the dependent of a U.S. Military member travelling on orders; or

3

    e.  At the time of check-in, the passenger was an active U.S. Military member on personal travel.

  ii.  were charged a checked bag fee inconsistently with a Confirmation Email received by the passenger stating eligibility to check a first bag for that ticketed trip at no additional charge.

(*Id.* § III.A, ECF No. 56-2 at 12).

For analytical purposes, Settlement Class members whose entitlement to a free checked bag derived from provisions in the Baggage Policy are referred to as the "Baggage Policy Class." Settlement Class members whose entitlement to a free checked bag derived from statements in their Confirmation Emails are referred to as the "Email Class."

**B.** **Notice to Class Members**

Notice was distributed to the Settlement Class in accordance with the Settlement Agreement. In July, 2018, AA provided the Settlement Administrator with the Class Notice List, which primarily contained names and other identifying information (generally, but not always, including mailing address and email address) for AA passengers who were likely overcharged for checked bag fees. *See* Giannotti Decl. ¶ 6. On July 21, 2018, the Settlement Administrator disseminated the email notice to those individuals for whom an email was listed in AA's records. *Id.* ¶ 8. It mailed the short-form notice and the claim form to those individuals for whom a mailing address was listed in AA's records on July 31, 2018. *Id.* ¶ 10. The Settlement Administrator mailed reminder postcard notices on October 5, 2018 and disseminated reminder emails on October 15, 2018. *Id.* ¶¶ 26-27.

On October 23, 2018, the Court granted a continuance of the Fairness Hearing and other dates and deadlines so that approximately 65,000 individuals who had not received mailed notice would have a chance to receive notice and file claims. (ECF Nos. 67, 74.) Thereafter, the Settlement Administrator mailed notice to individuals whose mailing addresses it had obtained

through address searches.  Giannotti Decl. ¶¶ 15-17.  The Settlement Administrator later disclosed to the Parties that it had inadvertently left some of the 65,000 individuals out of its address searches.  (*See* ECF No. 75.)  As a result, the Court ordered a second continuance of dates and deadlines on January 11, 2019.  (ECF No. 76.)  The Settlement Administrator mailed notice to individuals whose mailing addresses it had obtained through subsequent address searches on January 28, 2019.  Giannotti Decl. ¶ 18.

The short-form notice sent to Settlement Class Members contained all of the information necessary for class members to decide whether to file a claim or opt out, including: the nature of the lawsuit; the basic structure of the settlement; instructions for filing a claim, opting out, or objecting to the settlement, and the deadline for each; the consequence for failing to file a claim or opt out; the range of possible refund awards for eligible Settlement Class members; and the time, date, and location of the fairness hearing.  *See* Settlement Agreement Ex. C (ECF No. 56-2 at 69).  In addition, the short-form notice included instructions for accessing the long-form notice, which contained more detailed information regarding the litigation and the range of possible refund awards, on the Settlement Administrator's website.  *Id.*; *see also* Giannotti Decl. ¶ 14.

AA bore all costs of notice and administration.  (Settlement Agreement § VIII.B, ECF No. 56-2 at 20).  Those costs total approximately $2 million.  Giannotti Decl. ¶ 4.  None of those costs will be deducted from Class Members' awards.

C.      **Benefits to the Class**

All members of the Settlement Class who submitted timely, verified claims will receive full refunds of the fees they paid to AA for bags that should have been checked for no additional charge under the Baggage Policy, defined as Baggage Policy Bags in the Settlement Agreement,

plus 5% interest.  (Settlement Agreement §§ II.F; IV.B.1, ECF No. 56-2 at 15-16.)  For bags that should have been transported for free according to statements in a Confirmation Email, defined as Confirmation Email Bags in the Settlement Agreement, AA will provide a refund equal to 75% of the checked bag fee charged.  (*Id.* §§ II.O; IV.B.2, ECF No. 56-2 at 16.)

**D.**     **Release**

Claims of Settlement Class Members are only released as specified in the Settlement Agreement.  *Id.* §§ II.LL; II.SS.  That is, the Release only applies to the specific checked bag fees that are at issue in the Settlement: bags that the Settlement Class Members should have been able to check for no extra charge under the Baggage Policy, for the reasons listed in the Settlement Class definition, and first checked bags that were listed as free in a Confirmation Email.  (*Id.* § II.MM, ECF No. 56-2 at 10.)  In addition, the Release only applies to members of the Settlement Class to whom Notice was directed by postal mail or email and others who have submitted Claim Forms, and it does not apply to individuals who have opted out of the Settlement Class.  (*Id.* §§ II.LL; II.SS, ECF No. 56-2 at 10-12.)

### III.     THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL.

Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits.  It provides that a class action "may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  The court approval process has three principal steps:

1. A preliminary approval hearing, at which the court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms;

2. Class members are notified of the proposed settlement and given an opportunity to express any objections; and

3. A formal fairness hearing, at which the court decides whether the proposed settlement should be finally approved as fair, adequate, and reasonable to the class.

Federal Judicial Center, Manual for Complex Litigation, § 21.632-34 (4th ed. 2004).

Under Rule 23, as recently amended, where a proposed class action settlement would bind class members, it may only be approved if the court determines it is "fair, reasonable, and adequate," considering whether:

A. the class representatives and class counsel have adequately represented the class;

B. the proposal was negotiated at arm's length;

C. the relief provided for the class is adequate, taking into account:

   i. the costs, risks, and delay of trial and appeal;

   ii. the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   iii. the terms of any proposed award of attorneys' fees, including timing of payment; and

   iv. any agreement required to be identified under Rule 23(e)(3); and

D. the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors weigh in favor of final approval of the Settlement Agreement.

A. **Plaintiff and Class Counsel Have Adequately Represented the Class.**

That Plaintiff and Class Counsel have adequately represented the Class is demonstrated by the excellent results for Class Members.  Each member of the Baggage Policy Class who submitted a timely, valid, and verified claim form will receive a full refund of their incorrectly charged checked bag fees, plus interest at the rate of 5% under Texas law.  All Email Class Members who submitted timely, valid, and verified claim forms will receive a refund equal to

75% of their incorrectly charged checked bag fees.  Class members would not obtain a significantly greater award at trial, as additional measures of damages such as punitive damages are not recoverable under breach of contract.  *See Weber v. Domel*, 48 S.W.3d 435, 437 (Ct. App. Tex. 2001).  Currently, 118,112 claims have been or are slated to be verified, with a total value of $6,671,449.41, and these numbers may still grow as the Parties resolve remaining disputes over claims.  Dardarian Decl. ¶¶ 3-4.  Moreover, the high claim rate shows that Class Counsel's advocacy for a robust notice program, including multiple rounds of reminder notices, and straightforward claim process gave Class Members substantial opportunity to file claims.  Accordingly, the benefits to Class Members under the Settlement show that Plaintiff and Class Counsel have adequately represented the Class.

That Plaintiff and Class Counsel have adequately represented the Class is further demonstrated by the fact that no Class Members have filed objections.  *Id.* ¶ 4.  Moreover, in contrast with the 242,241 Class Members who have filed claims to date, only 35 individuals have filed requests for exclusion, only 10 of whom were actually on the Class Notice List.  *Id.* ¶ 24.

**B.**     **The Settlement Is the Product of Serious, Arm's-Length Negotiation.**

This Settlement Agreement is the result of a vigorous negotiation between the Parties that began shortly after Plaintiff served AA with the Complaint.  On February 16, 2018, the Parties participated in a mediation before Magistrate Judge M. Page Kelley.  Declaration of Linda M. Dardarian in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 57) ¶ 22.  Over the course of the months that followed, the Parties exchanged detailed information about AA's baggage charge records and countless phone calls and emails about the data from these records as well as other issues.  *Id.*  They participated in several status conferences with Magistrate Judge Kelley in order to resolve all facets of the

8

agreement before the May 2017 deadline for Plaintiff's motion for class certification. *Id.* Accordingly, the Settlement Agreement is the product of an arm's length negotiation between capable and experienced counsel and is entitled to a presumption of fairness, reasonableness, and adequacy. *See, e.g.*, *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280-81 (S.D.N.Y. 1999).

### C.   The Relief to the Class Is Adequate in Light of the Risks of Further Litigation, the Methods of Distributing Relief to the Class, Terms Related to Attorneys' Fees, and the Absence of Side Agreements.

#### 1.   The Costs, Risks, and Delay of Trial and Appeal

The complexity and expense that would be involved in litigating this case through trial stem in part from the enormous amount of data analysis involved in identifying the hundreds of thousands of AA passengers who paid checked bag fees inconsistently with provisions of the Baggage Policy and Confirmation Emails over the four-year liability period, and the amounts of those checked bag charges. The information needed to determine whether any individual passenger was overcharged to check a bag is highly complex and spread across multiple databases. *See* Declaration of Tucker Green in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 60) ¶¶ 6, 11. Performing this data analysis as part of settlement negotiations rather than in litigation has had two major efficiency advantages: First, the Parties have saved significant time and effort by analyzing the data collaboratively rather than by adversarial methods. Second, the Parties have achieved economies by verifying the data only for those passengers who actually submitted claim forms. (ECF No. 57 ¶ 28.)

In addition, the Parties expect that further litigation would raise numerous complex, contested legal issues, including: (1) whether plaintiff can obtain class certification in light of the notice posted on aa.com purporting to waive the class action rights of website users; (2) whether

9

731964.10

plaintiff can obtain certification of a class that includes nonresidents of Massachusetts in light of the ruling in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781-84 (2017); (3) whether class litigation would be manageable; (4) whether Plaintiff's and class members' claims are limited by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713; and (5) whether the Confirmation Email results in a contractual obligation. (*See* ECF No. 57 ¶¶ 30-31.) As a result, approval of the Settlement Agreement would obviate significant effort and expense and therefore serves judicial economy.

### 2. The Effectiveness of the Method of Distributing Relief to the Class

Although the complexity of AA's passenger records has made it challenging to identify Class Members, the Parties undertook great efforts to ensure that as many affected passengers as possible received notice and had the opportunity to file claims. The Settlement Administrator searched public records for Class Member mailing addresses, and on the Parties' motion, the Court twice continued dates and deadlines to give late-noticed Class Members an adequate opportunity to file claims. Dardarian Decl. ¶ 5. The Parties designed the claim form to be as simple and straightforward as possible. *Id.* As a result of these efforts, at least 118,112 Class Members will receive refunds, valued at a total of $6,671,449, and the overall claim rate stands at 34%. Dardarian Decl. ¶¶ 3-4; Giannotti Decl. ¶ 4. Moreover, the Release is narrowly tailored to apply only to individuals to whom Notice is directed by postal mail or email and others who submit claim forms. (Settlement Agreement §§ II.LL; II.SS, ECF No. 56-2 at 10-12).

### 3. The Terms of Any Proposed Award of Attorney's Fees

Rather than providing an agreed-upon attorneys' fee award, the Settlement allowed Plaintiff to petition for up to $2,750,000 in attorneys' fees and costs, and AA reserved the right to oppose Plaintiff's motion. (*Id.* § VI.B, ECF No. 56-2 at 17.) AA did so. (ECF No. 83.) Any

award of fees and costs to Class Counsel will not be deducted from Class Members' awards. Accordingly, Settlement terms related to attorneys' fees do not factor into the adequacy of Class Members' recovery.

### 4. No Side Agreements

The Parties have made no agreements apart from the Settlement Agreement that must be disclosed under Rule 23(e)(3).  Dardarian Decl. ¶ 6.

## D. The Proposal Treats Class Members Equitably Relative to Each Other.

Members of the Settlement Class who submitted timely, verified claims will receive full refunds of the fees they paid to AA for bags that should have been checked for no additional charge under the Baggage Policy, plus 5% interest. (Settlement Agreement § IV.B.1, ECF No. 56-2 at 15-16.)  For bags that should have been transported for free according to statements in a Confirmation Email, AA will provide a refund equal to 75% of the checked bag fee charged.  (*Id.* § IV.B.2, ECF No. 56-2 at 16).  The difference between refunds available to Baggage Policy and Email Class members is due to the extra risk that would be involved in litigating the Email Class claims, in light of AA's position that the Confirmation Email was received after the passenger agreed to the Conditions of Carriage, so statements in the Email regarding checked bag fees did not create a contractual obligation.  Dardarian Decl. ¶ 7.  Because the Email Class's claims entail greater risk, the Settlement treats Class Members equitably relative to each other.

## IV. THE CLASSES SHOULD BE CERTIFIED ON A PERMANENT BASIS.

To be certified for the purposes of settlement, a class must meet all of the applicable Rule 23 requirements with the exception of manageability.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997).

11

731964.10

On June 22, 2018, the Court granted preliminary approval of the Settlement and ruled that both the Baggage Policy Class and the Email Class satisfy the applicable requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  (ECF No. 65 ¶¶ 4-5.)  Since then, nothing has occurred that would alter this conclusion in any way.  *See* Dardarian Decl. ¶ 8. Accordingly, for the reasons set out in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 56 at 15-19), the Settlement Classes should be certified on a permanent basis.

## V. CONCLUSION

Plaintiff respectfully requests that the Court: (1) grant final approval of the Settlement Agreement; (2) certify the Settlement Class on a permanent basis; and (3) order final judgment, as set out in greater detail in the attached Proposed Final Judgment.

Dated:  March 28, 2019

Respectfully submitted,

/s/ Linda M. Dardarian
Linda M. Dardarian (*pro hac vice*)
ldardarian@gbdhlegal.com
Byron Goldstein (*pro hac vice*)
brgoldstein@gbdhlegal.com
Raymond Wendell (*pro hac vice*)
rwendell@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA  94612
Tel:    (510) 763-9800
Fax:    (510) 835-1417

Benjamin Edelman (BBO #663528)
LAW OFFICES OF BENJAMIN EDELMAN
169 Walnut Street
Brookline, MA 02445
Tel:    (617) 297-7360

Attorneys for Plaintiff and the Proposed Class

731964.10

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated on the NEF as non-registered participants on March 28, 2019.

/s/ Linda M. Dardarian
Linda M. Dardarian